In the Matter of the Petition of STILLMAN GOODÈNOUGH in behalf of HANNAH GOODENOUGH for a Writ of HABEAS CORPUS.

Where a minor is bound by the supervisors of the poor (under sec. 19, ch. 84, R. S.), as in other cases, the indentures, must specify some "profession, trade, or employment" in which he is to be instructed, or it is *void*.

On the hearing of a *habeas corpus* on behalf of a minor, the respondent claiming as master, if the indentures are void, the child, if under fourteen, will generally be delivered to the father on his petition, unless there is something in his situation or conduct rendering him unfit for the trust; or, the father being dead, to the mother, on her petition, if she remains a widow. But an infant over fourteen will in every case be permitted to choose for himself.

In this case the infant was a girl twelve years old, who had lived for six years, and been well treated, as a member of the family of the respondent, a respectable householder. At the time she went to live with him she and her mother were inmates of a county poor house, and her father, the petitioner, a convict in the state prison; and there was no evidence to show that he had since become morally and pecuniarily fitted to have the custody of the child. *Held*, that although the indentures under which respondent claimed such custody were void, the court might properly refuse to deliver the child to the father.

*It seems* that the judge should have examined the minor, and permitted her to determine whether she would go to the father or remain with the respondent.

CERTIORARI to the County Judge of *Dodge* County.

On the petition of *Stillman Goodenough*, in October, 1864, alleging that *Hannah Goodenough*, his daughter, a minor aged eleven years, was restrained of her liberty by *William Brown* of said county, &c., the court issued a writ of *habeas corpus;* to which *Brown* made return, in substance, that in February, 1859, the said *Hannah* and her mother were inmates of the county poor house in said county, and a county charge; that the father of said *Hannah* was at the same time a convict in the state prison of this state, and had long before then been

unable to support said minor and her mother; that on the 21st of said month the county superintendents of the poor of said county, by indenture in two parts executed by them and said *Brown*, bound said *Hannah* to him as an apprentice, he being then and still a respectable householder of said county; that thereupon he took her into his care and custody, and had since kept and maintained her as a member of his family, and had faithfully performed his part of said contract of indenture; and that by virtue of such indenture he retained the custody of said child.

The indenture (of which a copy was annexed to the return) states that the said superintendents "hereby put and bind the said minor to the said *William M. Brown*, to serve from the date thereof until she shall have attained to the age of eighteen years, during all which time said minor shall be subject to the care, control and custody of said *Brown;* and the said *Brown* doth covenant and agree to take good and suitable care of said minor, and to provide for her suitable food, lodging and clothing, and all things necessary in sickness and health, and to teach her, or cause her to be taught, to read and write, and also to be instructed in the general rules of arithmetic, and to give her, at the expiration of her term of service, a new bible and an extra suit of new clothes."

The petitioner demurred to the return; but the judge overruled the demurrer, holding that the return showed the child to be legally in the custody of *Brown*, and ordered her to be remanded to his care, custody and control "under said indenture of apprenticeship."

*E. & C. T. Wakeley*, for plaintiff in error, contended that the alleged indenture was void: first, because it was not with the minor's consent; secondly, because it purported to bind a female child until the age of eighteen, while the statute provides that it shall be "until the age of eighteen or until her marriage within that time;" thirdly, because it binds her only " to serve," and specifies no "profession, trade or employ-

ment." *Respublica v. Keppele*, 2 Dal., 197 ; *Commonwealth v. Jones*, 3 Serg. & R., 163 ; *Comm. v. Jennings*, 1 Browne (Pa.), 197 ; *Butler v. Hubbard*, 5 Pick., 250 ; *Day v. Everett*, 7 Mass., 145 ; *Reidell v. Morse*, 19 Pick., 358 ; *Burnham v. Chapman*, 5 Shep., 385 ; *Baker v. Winfrey*, 15 B. Mon., 499 ; *Ellen v. Topp*, 4 Eng. L. & E., 412 ; *Bowes v. Tibbets*, 7 Greenl., 457 ; R. S. of Maine, 1841, sec. 13, p. 239 ; " Apprentice," Bouvier's Dic.; " Servant," 2 id.; R. S., ch. 34, sec. 19, and ch. 113, secs. 1–5, 7, 27 *et passim*.

*Smith & Ordway, contra*, cited R. S., ch. 113, secs. 1, 8 ; *The King v. Laindon*, 8 Term, 379 (215); *The King v. Rainham*, 1 East, 531 ; *Fowler v. Hollenbeck*, 9 Barb., 309 ; *Bowes v. Tibbets*, 7 Greenl., 459 ; *People v. Fowler*, 1 Sandf., 678. If the indenture were void as to the child, it would not lie in the mouth of this petitioner to impeach it, he having long relinquished her to the care of the public. *Matter of McDowles*, 8 Johns., 328. The facts admitted by the demurrer show him unfit to have the custody of the child, and a court will not give it to him. 2 Kent, 195 and note b ; R. S., ch. 112, sec. 5.

*By the Court*, DIXON, C. J. There is no doubt in the mind of the court that the indentures are void for not specifying some " profession, trade or employment " in which the apprentice was to be instructed. The statute is very plain upon this point. Such are its words in case of the apprenticeship of an infant, of his or her own free will, with the consent of the father, mother, guardian, or supervisors, &c., as prescribed by chapter 113, Revised Statutes. In the case of orphans or minors otherwise likely to become chargeable to the public, the requirement is the same. It is made the duty of the supervisors, or superintendents of the poor, " to bind such minor as an apprentice to some respectable householder of the county, * * * * by written indenture, which shall bind such minor to serve as an apprentice, and shall be executed in like manner, and shall be of the same tenor and effect, as inden-

tures executed pursuant to the provisions of the chapter entitled 'Of Masters and Apprentices.'" R. S., ch. 34, sec. 19. If this language were not sufficiently explicit without, the word " apprentice " would, *ex vi termini*, imply service in some specific "profession, trade or employment." The reason of this requirement is obvious. Beside their present support and education, the legislature intended that such children should be trained up in the knowledge of some trade or art by which, when they became their own masters, they might honestly maintain themselves. For the attainment of this humane object it becomes the duty of the supervisors or superintendents, whose power in such cases is absolute and compulsory, to name some trade or employment suitable to the sex and mental and physical condition of the child, in which it shall serve, and to cause the same to be inserted in the indentures, and not to leave this most important requirement to the self-interest or caprice of the person about to become the master.

The indentures being illegal, and there being nothing to preclude the father, the natural guardian, from asserting such illegality, the question arises, what order ought the county judge to have made as to the custody of the child? That he ought not, against her will, to have remanded her to the custody of the respondent is very evident. The indenture being void, the respondent has no legal claim to the custody or services of the child. Ought the judge then to have ordered her into the custody of her father? That the father has a legal and paramount right to the custody and services of his child will not in general be denied; and that such right will sometimes be enforced upon this writ seems settled by the later and better considered decisions. *The Queen v. Clarke*, 7 Ellis & Black., 186 (90 E. C. L., 185); *State v. Richardson*, 40 N. H., 272; *The King v. Greenhill*, 4 Adolph. & Ellis, 624 (31 E. C. L., 153). Formerly the rule was different, and it was held that the court was not bound in any case to deliver the infant over to any particular person, though such person was the natural

or legally appointed guardian.  *Rex v. Delaval,* 3 Burrow, 1434; *In the matter of Waldron,* 13 Johns., 418; *In the matter of McDowle,* 8 Johns., 328; *Commonwealth v. Hammond,* 10 Pick., 274.    All that the court was bound to do was, to see that the infant was not wrongfully imprisoned, or detained against his will.    If he was they would set him at liberty, and, if of sufficient age, leave him to go where he pleased. But if he was of such tender years that he could not form a proper judgment, the court would exercise its judgment for his benefit, and do what it thought most for his interest and welfare.    It was in the sound discretion of the court to change the custody of the infant, or not.    But by the later decisions, those first above cited and others, this doctrine seems to have been somewhat modified.  If the father apply, the child should, if within the age of nurture, which is fixed at fourteen years, be delivered over to him, unless there be something in his situation or conduct which renders him unfit for the trust.    If the father be dead, and the mother still a widow, the same rule applies to her.    But if the mother be married again and her husband living, the old rule prevails.    The infant, if of sufficient age, must choose for himself; if not, the court will choose for him.    In such case the mother is considered by her subsequent marriage as having lost her right of guardianship for nurture.    *Commonwealth v. Hamilton,* 6 Mass., 273; *State v. Scott,* 10 Foster, 274; *Worcester v. Marchant,* 14 Pick., 510. But when the infant is above the age of fourteen years, he must, it seems, in every case, choose for himself.    The court will not compel him, upon *habeas corpus,* to submit to parental authority.

In this case the infant is a girl now nearly twelve years of age.    *Prima facie,* therefore, the father is entitled to have her delivered over to him, unless enough is shown in the return to rebut that right.    The exception, as we have seen, is where it appears that the father is an improper person to have the care and management of the child.    It is said in *State v. Richardson,*

*supra*, that in determining this question the court will take into consideration the right of the father, his ability and inclination to perform faithfully the trust imposed upon him, the present condition of the child, and, if of years of discretion, its wishes upon the subject. It is furthermore said, that a proper regard to the sanctity of the parental relation will require that the objection be sustained by clear and satisfactory proofs. Tested by these rules we are of opinion that enough is shown by the return to justify the court in exercising its discretionary power, and in refusing to deliver the child to the petitioner. It appears that the respondent is a respectable householder of the county of Dodge, and that the child has resided with, and been kept and maintained as a member of his family now upwards of six years. Nothing is shown to cause a doubt that her treatment has not been proper and suitable in every particular. It also appears that at the time she came to reside with the respondent, she and her mother were inmates of the poor house of the county, and her father, the petitioner, a convict undergoing punishment in the penitentiary of the state. Upon these facts we cannot hesitate. Nor do we deem it necessary to comment upon them. A husband and father who has been so culpable or so unfortunate as to bring his wife and infant child to the poor house, and himself to the felon's cell, and these so recently, should at least be required to make some explanation to entitle himself to the favor of the court in a proceeding like this. He should, at all events, show a change of circumstances, and that he is morally and pecuniarily fitted to have the care and education of his child, before the court will place her in his custody, especially where it appears that she is so suitably provided and cared for as in the present instance.

It will be seen from the reported cases that children between the ages of seven and fourteen are often interrogated as to their wishes, and, if of sufficient intelligence, allowed to choose for themselves. There are several instances of those between ten and twelve being thus allowed their choice. It is probable,

therefore, that the county judge should have examined the girl and have given her the privilege of determining for herself whether she would go to her father or remain with the respond. ent. But for reasons already stated, he should not have remanded her to the custody of the respondent; and because he did so, his order must be reversed.

Order reversed.