Sheers vs. Stein and another.

SHEERS, Plaintiff in error, vs. STEIN and another, Defendants in error.

October 19 — November 5, 1889.

*Parent and child: Right to care and custody of infant.*

1. If, for any cause, the welfare of an infant child demands that its care and custody be withheld from the parent and given to another, the parent is not a *suitable* person to have such care and custody, within the meaning of sec. 3964, R. S.

2. In *habeas corpus* proceedings by a father to obtain the custody of his infant child, it appeared that five years before, when the child was about six months old, the petitioner had voluntarily surrendered her to the respondents (one of whom is his sister) to nurture and maintain as their own; that they had reared her at their own expense, and that the affection between them and her was that of parent and child; that they were people of high moral character, and abundantly able and willing to care for and educate her as their own daughter; and that the petitioner had never manifested proper affection for the child, and had even expressed a doubt of being her father. *Held,* that although it further appeared that the petitioner was of good character and repute and able to support the child, the court was justified in remanding her to the custody of the respondents.

ERROR to the Circuit Court for *La Fayette* County.

On the petition, in due form, of *Louis P. Sheers*, the plaintiff in error, a writ of *habeas corpus* was duly issued to the respondents by H. C. Martin, a court commissioner, commanding them to produce before him Agnes Minnie Sheers, by them alleged to be detained and imprisoned, together with the time and cause of such detention or imprisonment, and to make return to said writ before him on a day therein named. The respondents obeyed the mandate of the writ by producing the said Agnes Minnie before the commissioner and making return to said writ.

Such return shows, in substance, that, at the time of the birth of said Agnes Minnie, her mother, Agnes Sheers, and the petitioner, her husband (who is the brother of the respondent *Mrs. Stein)*, resided at Le Mars, Iowa; that in August, 1883, the said *Louis* and Agnes, and their child, Agnes Minnie (who was then about six months old), became seriously ill, and *Mrs. Stein* went to their home to care for them. Mrs. Sheers died during the same month, and it was expected that both the petitioner and child would also die, but by means of careful nursing by *Mrs. Stein* they both recovered, but not until several months afterwards; that, some three weeks after the death of Mrs. Sheers, *Mrs. Stein* returned to her home in Belmont in this state, bringing with her *Mr. Sheers* and the child; that *Mrs. Stein* did everything in her power to secure and hasten their recovery, and it was generally believed that without such efforts on her part neither would have survived; that after the death of Mrs. Sheers the petitioner had no family except a son, then about five years old, and the said infant, Agnes Minnie; that he was without means to provide a home for or maintain said children, and but for the aid of their friends the petitioner and his children would have been dependent upon charity for their support; that the respondents, with their family, consisting of a daughter, sixteen years of age, and the said

infant, have for more than ten years resided in Belmont aforesaid, where they have a good, comfortable home; that during all that time the respondent *Samuel* has been, and now is, a merchant, doing a reasonably profitable business, and during that time has been, and is now, abundantly able and willing to support, and has supported, his said family, including the said infant, in a proper manner, and which fully comports with their station in life.

The above allegations are all admitted to be true by the petitioner. The return then proceeds to state that, the petitioner knowing the above facts and knowing that there was no other place so well adapted for a good and comfortable home for his child, and that there was no other person who would so nearly supply a mother's place to her as *Mrs. Stein*, and the respondents offering and consenting thereto, the petitioner then relinquished all his legal rights and all rights to the custody of the said child during her minority to the respondents, and agreed that they might have her and take her into their home as their own child, and nurture and maintain her as one of their own children, and that he would not interfere with their custody and control of her; thus emancipating her from his custody and the right to her earnings. That they have fully performed the agreement on their part, at their own cost and expense, relying upon the performance of such agreement by the petitioner. That the child is happy and contented, and regards the respondents as her parents, and that it would be cruel and inhuman to take her from them and give her into the hands of those she regards as strangers. That they are ready and willing to care for, maintain, support, and educate her, so long as she may want a home, in a manner in keeping with their station in life, at their own expense. That the petitioner never exhibited any affection for the child, although he lived with the respondents most of the time after leaving Le Mars, in 1883, until March,

1886, but avoided her, and had very little to say to or do with her. That the petitioner married another wife in March, 1886, and soon after emigrated to Nebraska, and neither he nor his wife have any affection for the child; and that for the reasons above stated, and others, he is not a suitable person to have the custody of the child.

All of the averments of the return not admitted as above stated, are denied by the petitioner.

Much testimony was introduced before the commissioner by both parties; that on behalf of petitioner being by depositions, and that on behalf of the respondents being oral. After the hearing, the commissioner made formal findings of fact, amounting substantially to a finding that the averments contained in the return of the respondents were proved. In addition thereto, he also found that the petitioner had never contributed anything to the support of the child; that he manifested aversion to, rather than affection for, her; and that on one occasion he expressed to his brother his belief that he was not her father. The commissioner also found that it was the opinion of two sisters and one brother of the petitioner (being the only members of his family whose testimony was taken), and also of the best citizens of Belmont unanimously, and of the court, "that it is greatly to the advantage and best interests of the infant, Agnes Minnie, that she remain in the custody of the respondents, who are as much attached to her as parents could be to their own child, and to whom the child is as much attached as to her own parents."

Both the petition and return are quite lengthy, but the foregoing is believed to be a sufficient summary of their contents.

The commissioner thereupon ordered and adjudged that the respondents are entitled to the custody of such infant until she shall arrive at the age when she may properly select her own custodian; that the respondents have not

illegally restrained her of her liberty; and that she be remanded to their care, custody, and control. The petitioner thereupon sued out a writ of *certiorari* from the circuit court to remove such proceedings to that court for review, and the commissioner made due return to such writ, including a large amount of testimony. He certified in his return, however, that he only took meager notes of the testimony introduced on the hearing; and that the testimony returned by him is incomplete, and should not be taken or considered as showing all the testimony on the hearing; and further that no phonographic reporter was present at the examination.

The matter was heard in the circuit court, and the hearing resulted in an affirmance of the order and judgment of the commissioner. The petitioner then sued out a writ of error from this court to obtain a review and reversal of the judgment of the circuit court.

*D. S. Rose*, for the plaintiff in error, contended, *inter alia*, that at the common law and by the statutes of this state the father is entitled to the custody of his minor children unless he is incompetent to transact his own business or is otherwise unsuitable. He cannot divest himself of this right except in the manner provided by statute, by order of adoption or by indentures of apprenticeship. R. S. secs. 3964, 4022, 2377, 2379; Schouler, Dom. Rel. secs. 245, 251; *Henson v. Walts*, 40 Ind. 170; *Robinson v. Parish*, 62 Ill. 132; *Johnson v. Terry*, 34 Conn. 259; *Adams v. Oaks*, 20 Johns. 282; *Washaw v. Gimble*, 50 Ark. 351; *Burger v. Frakes*, 67 Iowa, 460; *People v. Mercein*, 3 Hill, 399; *State ex rel. Mayne v. Baldwin*, 5 N. J. Eq. 454; *State v. Clover*, 16 N. J. Law, 419; *Regina v. Smith*, 16 Eng. L. & Eq. 221; 1 Bl. Comm. 453; *Comm. v. Briggs*, 16 Pick. 203; *Brooke v. Logan*, 112 Ind. 183; *In re Scarritt*, 76 Mo. 565; *State v. Libbey*, 44 N. H. 321. The only inquiry in this case should be, Is the father a suitable person to take care of

the child? Schouler, Dom. Rel. secs, 342, 343; *Brooke v. Logan*, 112 Ind. 183; *State ex rel. Neider v. Reuff*, 29 W. Va. 751; *Armstrong v. Stone*, 9 Grat. 102; *Maples v. Maples*, 49 Miss. 393; *Miller v. Wallace*, 76 Ga. 479; *State v. Kirkpatrick*, 54 Iowa, 373; *In re Goodenough*, 19 Wis. 274. In the last case it is said that the child should be delivered to the father, "unless there is something in his situation or conduct which renders him unfit for the trust." See *Beyer v. Vanderkuhlen*, 48 Wis. 323. The father must be shown to be of such a description as to render it not only better, but essential to the safety of the child, or to its welfare in some serious and important respect, that his right should be treated as lost, or surrendered, or interfered with. *In re Fynn*, 12 Jur. 718; *In re Pulbrook*, 11 id. 185, and cases cited. The conduct of the father in permitting his child to remain with his sister while he was laboring in poverty for a start in the distant west, does not impair his right to the custody of the child. *Armstrong v. Stone*, 9 Gratt. 102. The fact that the child prefers the defendants in error to her father "is an argument for changing her home, that her affections may be restored to their natural channel." *Wilcox v. Wilcox*, 14 N. Y. 575. Her childish preferences should not control the court. She is too young to elect. *State v. Richardson*, 40 N. H. 272; *Henson v. Walts*, 40 Ind. 170; *Rusk v. Vanvacter*, 9 W. Va. 600; *Comm. v. Nickerson*, 5 Allen, 518; *Comm. v. Briggs*, 16 Pick. 204; *Comm. v. Taylor*, 3 Met. 73. The discretion, if any, which the court may exercise, "is a legal discretion which should be guided by the principles of law and not by the notions and fancies of the court." *Miller v. Wallace*, 76 Ga. 479.

For the defendants in error there was a brief by *Orton & Osborn*, and oral argument by *P. A. Orton*. To the point that the right of the father to the custody of his minor child is only a presumptive or *prima facie* right, which by his acts he may forfeit or waive, and which a

court will overrule for various reasons, the good of the child being the primary and controlling consideration, they cited *U. S. v. Green*, 3 Mason, 482; *Mercein v. People*, 25 Wend. 64; *In re Waldron*, 13 Johns. 418; *Smith v. Bragg*, 68 Ga. 650; *Brinster v. Compton*, 68 Ala. 299; *Joab v. Sheets*, 99 Ind. 328; *Jones v. Darnall*, 103 id. 569; *Sturtevant v. State*, 15 Neb. 459; *Corrie v. Corrie*, 42 Mich. 509; *Gishwiler v. Dodez*, 4 Ohio St. 617; Church, Hab. Corp. sec. 442; Schouler's Dom. Rel. (1st ed.), 338–9; Hurd, Hab. Corp. 462; *In re Gregg*, 5 N. Y. Leg. Obs. 265; *Comm. v. D'Houtville*, quoted from in 20 Am. Dec. 334; *Comm. ex rel. Terry v. Dougherty*, 1 Leg. Gaz. Rep. (Pa.), 63; Hurd, Hab. Corp. (2d ed.), 546, 550, and note; *Pool v. Gott*, 14 Law Rep. 269; *Clark v. Bayer*, 32 Ohio St. 305; *Dumain v. Gwynne*, 10 Allen, 270; *In re O'Neal*, 3 Am. Law Rev. 578; *Merritt v. Swimley*, 82 Va. 433; *Coffee v. Black*, id. 567; *People v. Porter*, 23 Ill. App. 196; *People ex rel. Brush v. Brown*, 35 Hun, 324; *Ex parte Murphy*, 75 Ala. 409; *Bonnett ex rel. Newmeyer v. Bonnett*, 61 Iowa, 198; *Verser v. Ford*, 37 Ark. 27; *Chapsky v. Wood*, 26 Kan. 650; *In re Bort*, 25 id. 308; *Bently v. Terry*, 59 Ga. 555; *State v. Baird*, 21 N. J. Eq. 384; *In re Goodenough*, 19 Wis. 274.

LYON, J. The arguments of counsel on both sides are long, eloquent, and able, and cover every phase of the case. Counsel cite therein numerous authorities to sustain their respective positions; but it is deemed unnecessary to review them here, because the law of the case seems to be well settled, and it may be stated quite briefly.

By the common law, as interpreted in some of the old cases, particularly in England, the father had almost an absolute right to the care and custody of his minor child, without much regard to his fitness therefor or the welfare of the child. Modern adjudications, both here and in England, have greatly modified the rule, and have incorporated

Sheers vs. Stein and another.

in the law more sensible and humane elements. It is now well settled, at least in this country, that although *prima facie* the father is entitled to the care and custody of his infant child, yet, if he be an unfit person therefor, or if it be for the welfare of the child that its nurture be committed to another, the court before which the matter is pending on *habeas corpus* may, in the exercise of a sound judicial discretion, deny such custody to the father, and give it to another. The same discretion is necessarily vested in any officer authorized to issue the writ. For a history of the law on this subject, and a statement of its present condition, see Hurd, Hab. Corp. ch. 9, §§ 3–7, where references to numerous cases relating thereto will be found.

The exercise of such discretion in a proper case is not inconsistent with the following provisions of sec. 3964, R. S., which are much relied upon by counsel for petitioner: "The father of the minor, if living, and, in case of his death, the mother while she remains unmarried, being themselves respectively competent to transact their own business, and not otherwise unsuitable, shall be entitled to the custody of the person of the minor, and to the care of his education." This statute leaves open the inquiry as to the suitableness of the parent for that purpose; and it seems quite obvious that if, for any cause, the welfare of the infant demands that its care and custody be withheld from the parent and given to another, the parent is not a suitable person to have such care and custody, within the meaning of the statute. It was so held, in effect, in *In re Goodenough*, 19 Wis. 274. A statute substantially like the present statute was in force when that case was decided (R. S. 1858, ch. 112, secs. 5–7); yet it was held, on *habeas corpus*, that it was within the sound discretion of the court or officer to change the custody of an infant of tender years, and that sufficient appeared to justify the exercise of such discretionary power in that proceeding by refusing to give the

custody of the child to .the petitioner, who was its father. The refusal went upon the ground of the bad character of the father; but, manifestly, the same rule is applicable if any other valid cause of unsuitableness exists.

In the present proceeding, we think the return of respondents to the writ of *habeas corpus* alleges facts which, if true, justify the exercise of discretion by the commissioner in respect to the care and custody of the child, Agnes Minnie. Such return is fully supported by the commissioner's findings of fact. Indeed, those findings make a stronger case against the petitioner than does the return. Such additional findings are specified in the above statement of the case, and will not be repeated here.

The testimony, or so much of it as appears in the return of the commissioner to the writ of *certiorari*, is sufficient, we think, to support the findings of fact, and consequently the averments in the return of the respondents to the writ. The testimony shows that the financial condition of the petitioner has much improved since he went to Nebraska, and he is now entirely able to support his child, and that he is a person of good character and repute. But the testimony also shows, or at least tends to show,— and on sufficient evidence the commissioner has found,— the existence of other facts which furnish a basis for the exercise of his discretion in the matter, and justified him in remanding the child to the custody and care of the respondents. That the petitioner voluntarily surrendered the child to the respondents to nurture and maintain as their own; that he suffered them to •do so, without objection, until they had come to feel for her all the affection of natural parents, and she to regard them as .her parents; that the respondents are able and willing to do their whole duty towards her, by caring for, supporting, and educating her as their own daughter; that they have ample means to do so, and are persons of high moral character; that the petitioner

has never manifested any proper affection for the child, but his conduct towards her was in such marked contrast to his treatment of his little son as to excite the attention of some of the witnesses; and, lastly, that after the death of his wife, the mother of the child, he expressed to his brother the horrible belief or suspicion that his dead wife in her life-time had played the harlot, and that he was not the father of the child over whom he now seeks to obtain paternal rights,— are verities in the case. We cannot doubt that the testimony sustains the finding of the commissioner that the petitioner is not a proper person to have the care and custody of the child, and justifies the exercise of his discretion in awarding such care and custody to the respondents. We conclude, therefore, that the circuit court properly affirmed the order and judgment of the commissioner.

Certain questions of practice, in such cases, have been raised by counsel for respondents. We do not pass upon or consider them, because we think it our duty to determine the matter on the merits. It harms neither party to leave those questions undetermined, and their solution must await a more convenient time.

*By the Court.*— The judgment of the circuit court, affirming the order and judgment of the court commissioner, is affirmed.