In re Guardianship of McChesney and another: McChesney's Appeal.

═══════════════

In re Guardianship of McChesney and another: McChesney's Appeal.

*March 2 — March 20, 1900.*

*Minors: Guardianship: Rights of father after divorce: Suitableness: Evidence: Testamentary guardian: Appointment by mother.*

1. Where the father of minor children whose custody had been awarded to his divorced wife applied to be appointed their guardian after her death, the fact that for several years prior to the hearing, so far as morality and integrity are concerned, he had lived a correct life, is not so conclusive upon the question of his suitableness for the guardianship as to preclude the court from looking into the circumstances which led to the divorce.

2. The fact that the mother of the children had attempted to appoint their grandmother as testamentary guardian was properly considered by the court as bearing on the propriety of her appointment in case the father was found an unsuitable person for the trust. [Whether a mother to whom the custody of her minor children has been awarded by the decree divorcing her from their father has a legal right to appoint a testamentary guardian for them, under sec. 3965, Stats. 1898, authorizing the father of a child, if living, and in case of his death the mother, by last will to appoint a guardian therefor, not determined.]

In re Guardianship of McChesney and another: McChesney's Appeal.

3. The fact that the father had neglected to visit his dying infant son, and had permitted the funeral of the boy to be held unnoticed by him, after special pains had been taken by the mother to remove all obstacles to his visiting the dying boy and attending the funeral, is sufficient, in the absence of some clear explanation, to sustain a finding that he had no fatherly love for his remaining children.

4. A groundless suspicion expressed by the father as to the paternity of his children is entitled to weight in determining whether he is a suitable person to have their care and custody.

APPEAL from an order of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

Proceedings for the appointment of a guardian of two minor children of Frances McChesney and the petitioner. The marriage took place in 1887. A divorce was granted in 1894. There were two infant girls, Edna Mabel and Viola Blanche, and an infant boy who died subsequent to the divorce, the custody of whom was awarded to the mother, the petitioner being required to pay to her $200 per year during their minority for their support. In 1898 Mrs. McChesney remarried to William Lappley, with whom she resided until March 31, 1899, when she died. Since such death the two girls have resided on a farm with their grandfather and grandmother, *Mr. G. De Bower* and *Mary De Bower*. The petitioner remarried in 1896, since which time he has maintained a home on a farm in Dane county, Wisconsin. The matters stated were set forth in the petition, with allegations to the effect that the *De Bowers* are unsuitable on account of their age to have the custody of the children and that the petitioner has a good home where the children can be suitably provided for and maintained. The *De Bowers* were made parties to the proceedings and answered, raising the question whether the petitioner is a suitable person to have the care and custody of the children, and whether the allegations as to their unsuitableness for the trust are true, and whether it is for the best interests of the

children to remain with them. The answer contained a prayer for the appointment of *Mrs. De Bower* as guardian of the children with the right to the custody of their persons and property during their minority.

The evidence was to the effect, and the court found, that for some years before the divorce the petitioner's conduct toward his wife was exceedingly cruel and inhuman; that he sustained, for a long period of time, immoral relations with a young servant girl in his family, and solicited other females, including his wife's mother, to submit to his adulterous desires, and that when the separation between himself and wife occurred he expelled her and her children from his house by physical force and compelled them to go, on a cold winter day, to a neighbor's house for protection, and that the circumstances of the occurrence evinced an entire absence on his part of natural parental feeling. The evidence further showed, and the court found, that from the time of the divorce to the commencement of these proceedings, *McChesney* paid but very little attention to his children; that he had been accustomed to meet them on the highway and not speak to or recognize them in any way; that he never showed any desire for their custody and little or no desire for their company or to treat them as his children in any way till these proceedings were commenced; that when his little boy was sick unto death he was notified of the fact by the mother in order that he might see his son before death occurred; and that after the child died he was notified of the funeral, but that he entirely ignored both of such occurrences, paying no attention to the funeral of the boy though he knew of its occurrence and was in the vicinity where he could readily have attended.

The only evidence to palliate *McChesney's* conduct in regard to his children, as found by the court, was that on one or two occasions during the life of the mother she indicated that she preferred that he should not have anything to do

with the children, and that the *De Bowers*, on one or two occasions, repelled his advances in regard to recognizing the children in a fatherly way, and indicated displeasure because he noticed them. There was further evidence, and the court found, that the petitioner is a man of considerable property and has a good home. The evidence further showed that the petitioner's conduct since his second marriage, aside from that toward his children, has been proper; and that he enjoys the confidence and respect of his neighbors.

The evidence further showed, and the court found, that for a considerable time before the death of the mother the children resided with the *De Bowers;* that it was the mother's desire, as indicated in her last will and testament, that her mother, *Mrs. De Bower*, should have the care of the girls during their minority; that by reason of the wish so expressed the children, from the death of their mother, have resided with their grandmother and are very much attached to her and to their grandfather also, and that the grandparents are very much attached to the children; that the grandparents have an excellent home and are of sufficient ability in every way to properly care for the children during their minority, and that the children are desirous of remaining with the grandparents.

On the facts found as indicated and the evidence the court denied the prayer of the petitioner and granted the prayer of the respondents. An order was thereupon entered accordingly appointing *Mrs. De Bower* guardian of the children to have the custody of their persons and property upon her giving a bond as indicated in the order. The petitioner appealed.

For the appellant there was a brief by *Jones & Stevens*, and oral argument by *B. W. Jones*.

For the respondents there was a brief by *R. M. La Follette* and *G. E. Roe*, and oral argument by *Mr. La Follette*.

MARSHALL, J.   There are no legal questions that need be discussed on this appeal.   It is conceded that the mother, who was awarded the custody of the children in the divorce action, being dead, the petitioner, as the only living parent, is entitled under the statute to be appointed their guardian, if competent to transact his own business and not otherwise unsuitable within the meaning of sec. 3964, Stats. 1898.   As regards the first requisite there is no question, so the case comes down to the second.   Independent of the petitioner's ability to transact his own business, is he a suitable person to be intrusted with the care and custody of the two infant girls, whose guardianship he seeks?   That is the question and is purely one of fact.   It is conceded that if the findings in that regard are sustained by the evidence the decision of the trial court is right.   We have examined the evidence with care and are unable to say that any material finding is contrary to the clear preponderance thereof.

Complaint is made because the court permitted evidence regarding the character of the petitioner at the time of the divorce decree and prior thereto.   It is by no means certain that if all such evidence were out of the record the order appealed from could properly be disturbed, but we cannot say error was committed in receiving it.   The trial court had broad discretionary power regarding the limits of the inquiry reasonably necessary to a correct determination of the controversy calling for a decision.   The history of the petitioner's life from the date of the marriage down to the hearing had a bearing on that controversy.   True, the fact that he, for several years prior to the hearing, so far as morality and integrity are concerned, had lived a correct life, was a strong circumstance in his favor, but it would be going too far to say that it established his character and suitableness for the guardianship of the infant girls so conclusively as to preclude the court from looking into the circumstances

that led to the decree divesting him of their custody and placing them with their mother.

It is useless to discuss here at length the circumstances referred to; they appear sufficiently in the findings of the court and are included in substance in the statement preceding this opinion. Suffice it to say that they are of such a character that it is not unreasonable to hold that a probationary period of more than six years would be required to so obliterate their effect upon the petitioner's suitableness to have the care and custody and education of infant girls as to preclude giving any weight to them in determining his character in that regard.

It is said the court gave undue weight to the expressed wishes of the children to remain with the grandparents. We cannot tell how that is. There is no indication in the record of what significance the court gave to the children's wishes. It is not suggested but that it was entirely proper to inquire of the children, as was done, as to their state of mind as regards being taken from their grandparents. We observe in the finding merely a brief statement that "the children, as expressed by them on the trial, are desirous of remaining with their grandparents, to whom they are warmly attached." There is nothing in that to indicate that the children's wishes were regarded as controlling in any sense.

Error is assigned on the admission in evidence of the mother's will attempting to appoint *Mrs. De Bower* the testamentary guardian of the children: (1) Because the conditions greatly changed after the making of the will. (2) Because the wishes of a deceased parent are of little weight as against the right of the survivor. (3) Because the mother had no right to appoint a testamentary guardian. In answer to all these suggestions it may be said that the evidence was not treated as vital to the case. Answering the propositions in detail we say, as to the first, the will speaks from

the death of the testator and must be presumed to express the wishes she entertained at that time; as to the second, that at most ·it only goes to the weight of the evidence; and as to the last proposition, that the evidence was not received or considered as proof of a rightful legal disposition of the children.

Sec. 3965, Stats. 1898, expressly authorizes the father of a child, if living, and in case of his death the mother, by last will to appoint a guardian therefor. That indicates the legislative policy to be that the parent entitled to the custody and care of a child during its minority shall have the right to appoint a testamentary guardian therefor. It is not necessary to say here that, since the decree of divorce removed the children of the petitioner from his control and placed them in the care and custody of the mother, his right as regards appointing a testamentary guardian for them was thereby taken from him and the right of the mother was substituted instead thereof. Such is the effect of some adjudications elsewhere. Hochheimer, Custody of Infants, § 78; *Wilkinson v. Deming,* 80 Ill. 342.

There can be no question but that the decree of divorce suspended the statutory power of the petitioner to control the custody of his children by his last will and testament, and that the spirit of it is, that the mother, the father being disabled from acting, may appoint a testamentary guardian. But whatever may have been the exact legal status of the mother in that regard, it is considered that, because of the legislative policy that she shall have the right where the father is so circumstanced that he cannot exercise the power of testamentary appointment, it was proper to consider her wishes, expressed in her will, not as warranting a denial of the right of petitioner to the custody of his children, but as bearing on the propriety of granting the prayer of *Mrs. De Bower* to be appointed guardian of the children in case the

In re Guardianship of McChesney and another: McChesney's Appeal.

petitioner's claim was not sustained because of his unsuitableness for the trust.

A further contention is made, that the court erred in deciding that the appellant is wanting in natural affection for the children. The evidence on that point abundantly supports the finding. Many circumstances bearing on the subject and indisputably established might be mentioned. The occurrences, unexplained and unexplainable consistent with natural parental feelings and conceptions of duty, of the appellant's neglect to visit his dying infant son, and of permitting the funeral of the boy to be held unnoticed by him and with less concern than one would naturally have for the funeral of a stranger happening in his vicinity, after special pains were taken by the stricken mother to remove all obstacles to his visiting the dying boy and being present at the funeral, are sufficient in themselves, in the absence of some clear explanation of such conduct, to prevent the finding from being disturbed that the appellant has no fatherly love for the children whose custody he seeks. It seems that no man could be so hardened toward his own flesh and blood, where represented by a child so young as to be free from any intelligent bias against him by reason of a hostile environment, as appellant's conduct indicates. The fact that the appellant so conducted himself suggests the probability that the groundless suspicion the evidence shows he had expressed as to the paternity of the children, or some of them, influenced him, which of itself, as has been held, is entitled to weight in determining whether he is a suitable person to have their care and custody. *Sheers v. Stein*, 75 Wis. 44.

We will not further discuss the findings or the evidence. The following is the situation, in brief, as appears by the record: The appellant, by his conduct, forfeited the control of his children and the decree to that effect stands undisturbed. He came before the court with a mere claim of

legal right to be preferred as the nominee for the guardianship of the children, since circumstances had arisen that rendered the appointment of a guardian necessary. They being under the age of choice, it was the duty of the court to make a choice for them, and to do so having regard for their best interests as the primary consideration and the legal right of the appellant to be chosen if suitable for the trust. In determining the propriety of appointing the appellant, since such appointment would take the children away from the home in which they were pleasantly located, and where they were reasonably certain of having proper parental care, and place them among those who were comparative strangers to them, such facts were entitled to consideration. The appellant has a second wife and family of children, so it is not certain that the two girls could be received there and permanently treated on an equality with the other child members of the household. Though appellant is now an upright man so far as regards morality and integrity, his past life cannot be entirely ignored. It is entitled to some consideration in determining whether he is a suitable person under all the circumstances for the trust he seeks. He does not possess natural love and affection for the children, and the circumstances of the situation render it quite probable that fatherhood is not the moving cause of his present desire to control them. The children were placed legally by the court where the mother, by an attempted testamentary disposition of their custody during their minority, placed them. Such testamentary disposition was in accord with the spirit of the statute as regards the right of the mother, and, though not binding upon the court, was entitled to consideration, since thereby the best interests of the children were conserved and there was no legal impediment, clearly, in the way. The grandparents and the children are warmly attached to each other, so that the relations between them are akin to those between par-

ent and child under normal conditions. The ability of the grandparents to care for the children is equal to that of the appellant, and their disposition to do so, independent of all selfish impulses, is manifestly superior to his. In view of all the things stated, within all the authorities, the court properly decided that the appellant had no legal right to be selected as guardian of the children, that the proper place for them was with their grandparents, and the proper person to have their legal guardianship was their grandmother. The cases in our own court so fully cover the subject, so far as the law is concerned, that it is considered that there is no need of going elsewhere for authority. *In re Goodenough*, 19 Wis. 274; *Sheers v. Stein*, 75 Wis. 44; *Johnston v. Johnston*, 89 Wis. 416; *Markwell v. Pereles*, 95 Wis. 406.

*By the Court.*— The order appealed from is affirmed.