CUSTODY OF COLLENTINE: JOHNSON and another, Respondents, vs. COLLENTINE, Appellant.

*March 6—April 3, 1934.*

For the appellant there was a brief by *Fiedler & Garrigan* of Beloit, and oral argument by *E. C. Fiedler*.

For the respondents there was a brief by *Conley & Conley* of Darlington, and oral argument by *E. F. Conley*.

NELSON, J. The question presented on this appeal, though somewhat troublesome, is very narrow: Was the court warranted in awarding the part-time custody of Marcia to her grandparents over the objection of her father?

The material facts are not in dispute. Edward Collentine and Blanche Johnson were married on March 17, 1928. On May 2d thereafter, Marcia was born. After the marriage Blanche Collentine and her child continued to reside with her parents, and to be almost wholly supported by them, until May 2, 1929, when she died. After the death of his wife Edward Collentine sought to obtain the custody of his child but did not succeed until he had brought proceedings in the county court. By an order of the court dated July 1, 1929, the custody and possession of Marcia was awarded to him. It was apparently understood, though such understanding was not embodied in any order of the court, that the petitioner might from time to time visit Marcia at the Collentine home. For some time thereafter the petitioner visited the child without any unpleasantness occurring. Later on considerable trouble between the petitioner and certain members of the Collentine household arose. The petitioner resides at Gratiot, some fifteen miles distant from the Collentine home, which is located about a mile from Darlington. At the time of the hearing the Collentine

family consisted of Edward Collentine, his mother and three sisters, one of whom was a country school teacher. It appears that occasionally the petitioner was notified by postcard not to come to visit the child on certain Saturday afternoons because the child would not be at home. Such happenings hurt the feelings of the petitioner. There is evidence that the petitioner at times brought cookies and candy to Marcia which the latter ate and which, the Collentines asserted, upset her. There is evidence of discourteous treatment of the petitioner and of her friends who accompanied her to the Collentine home. There is of course evidence of the deep love and affection which the petitioner has for Marcia. There is, however, no evidence tending to show that Edward Collentine was incompetent to transact his own business or was in any way unsuitable to have the custody of his daughter or the care of her education. The petitioner herself testified that the Collentine home was clean; that the child was kept clean, and that Edward Collentine was a fit person to have her part-time custody. There is no evidence tending to show that the care given Marcia in the Collentine home was not good. There is absolutely nothing in the record tending to show that the Collentines are not respectable people. There appears to exist some controversy as to which church Marcia shall be brought up in. The Collentines are members of the Roman Catholic church.

The court rendered a decision in which it stressed the deep affection of the petitioner for Marcia, the unpleasantness to which the petitioner's visits had given rise, the attitude of certain members of the Collentine family toward the petitioner and her friends, and in which it concluded that the best interests of Marcia will be substantially promoted by preventing the alienation of her affection for her grandparents, that such alienation will be prevented by permitting her to visit her grandparents and by permitting them

to have her part-time care and custody. The order of the court provided that the petitioner and her husband should have the care and custody of Marcia during the first week of each calendar month while Marcia is not attending school; that they should have the entire care and custody of Marcia during the week beginning September 10 and ending September 17, 1933; that when Marcia is attending school they should have the care and custody of her each alternate or second week from four o'clock p. m. on Friday until the following Monday morning, and that the father, Edward Collentine, should have the care and custody of Marcia at all other times. The order further provided that Edward Collentine should direct Marcia's education and religious training and that when of suitable age she should be permitted to attend the Roman Catholic church at Gratiot while in the custody of the petitioner and her husband.

The court made no findings as to the incompetency of the father to transact his own business, as to his unsuitability to have the custody of his child, as to any lack of care given Marcia, or casting any reflections upon the Collentine household or its members. While we appreciate the deep and tender affection which the petitioner has for Marcia and that the child is entitled to a continuance of that love and affection, such considerations are wholly insufficient to warrant a court in taking from a father who is competent to transact his own business and not otherwise unsuitable, the part-time custody of his child. Sec. 319.03, Stats. 1933, so far as here applicable, provides:

"The father and mother of the minor, if living together, and if living apart then either as the court may determine for the best interests of the minor, and in case of the death of either parent the survivor thereof, being themselves respectively competent to transact their own business and not otherwise unsuitable, shall be entitled to the custody of the person of the minor, and to the care of his education."

That statute is controlling. It must be held that Edward Collentine, as surviving parent, is entitled to the custody of his child so long as he is competent to transact his own business and is not otherwise unsuitable. Nothing can be added to what was said in *Markwell v. Pereles,* 95 Wis. 406, 69 N. W. 798. In that case the rights of a surviving parent to the custody of his child are fully stated. Of course the right of a surviving father to the custody of his child is not absolute. Such right may never be successfully asserted when it appears that he is unsuitable or his home and surroundings are inimical to the best interests or welfare of the child. *Sheers v. Stein,* 75 Wis. 44, 45, 43 N. W. 728; *State ex rel. Strachota v. Franz,* 166 Wis. 32, 163 N. W. 191.

The present controversy is not like that of *Jones v. State ex rel. Falligant,* 211 Wis. 9, 247 N. W. 445. In that case the child was over thirteen years of age, had always resided with her grandparents, was doing well in school, was happy and contented in the environment of the grandparents' home and earnestly desired to be allowed to remain in their custody.

While it is not the province of this court to lecture the parties to a controversy it may not be out of place to say that it seems to us that the parties ought to make an earnest attempt to bring about a more friendly relationship to the end that Marcia may continue to enjoy the very natural love and affection of her maternal grandparents. It seems to us that a little more kindly attitude toward each other may reasonably be developed which will tend to bring about a happy solution of this controversy.

*By the Court.*—Order reversed, with directions to dismiss the petition.