# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 05-6008EM
_____

In re:                                          *
                                                *
Michael Binns and Mary Ann Binns,               *
                                                *
        Debtors.                                *
                                                *
                                                *
 Karen Jacobus,                                 *
                                                * Appeal from the United States
        Plaintiff - Appellee,                   * Bankruptcy Court for the Eastern
                                                * District of Missouri
                                                *
        v.                                      *
                                                *
Michael Binns and Mary Ann Binns,               *
                                                *
        Defendant - Appellants.                 *

_____

Submitted: June 24, 2005
Filed: July 21, 2005

_____

Before DREHER, FEDERMAN, and VENTERS, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

Debtor-Defendants Michael Binns and Mary Ann Binns ("Debtors") appeal the bankruptcy court's order granting partial summary judgment in favor of Plaintiff Karen Jacobus ("Plaintiff") on her complaint to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) and (B). The court granted summary judgment under § 523(a)(2)(B) based on the application of collateral estoppel and the *Rooker-Feldman* doctrine to a state court judgment against the Debtors, but denied summary judgment under § 523(a)(2)(A). The Debtors timely appealed the court's order as well as the court's subsequent denial of a motion to reconsider that order.

We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we reverse the court's order and remand the case for further proceedings consistent with this opinion.

## I. STANDARD OF REVIEW

We review the court's entry of summary judgment *de novo*.[1] A grant of summary judgment must be reversed if there is a genuine issue of material fact precluding judgment as a matter of law.[2] The court's application of collateral estoppel and the *Rooker-Feldman* doctrine is also subject to *de novo* review.[3]

## II. BACKGROUND

On March 20, 2001, the Plaintiff initiated a lawsuit against the Debtors in the Circuit Court for Randolph County, Illinois ("Circuit Court"). The lawsuit alleged, *inter alia*, that the Debtors had defrauded the Plaintiff in connection with the sale of

---

[1] *Ahlborn v. Arkansas Department of Human Services*, 397 F.3d 620, 622 (8th Cir. 2005).

[2] *Id*. at 622-23.

[3] *Manion v. Nagin*, 392 F.3d 294, 300 (8th Cir. 2004) (collateral estoppel); *Heartland Academy Community Church v. Waddle*, 335 F.3d 684, 688-89 (8th Cir. 2003) (*Rooker-Feldman* doctrine).

2

their business to her by misrepresenting the value of the business, both orally and through the production of written financial records. The Debtors were properly served with process but chose not to appear or defend the lawsuit.[4] On July 30, 2002, the Circuit Court entered a judgment ("Default Judgment") against the Debtors. The Default Judgment awarded compensatory damages in the amount of $597,890, and further stated, in pertinent part:

> The Court Further Finds that with reference to the allegations in the complaint, the Defendants' failure to appear or otherwise answer the pleadings, the Defendants' admission that the gross sales amount of Marilyn's Hallmark in 1999 were [sic] intentionally overstated, that Michael Binns provided false financial records to the Plaintiff to induce the Plaintiff's purchase of Marilyn's Hallmark, the court assesses $200,000 for punitive damages due to the intentional actions of fraud, plus the costs of the suit in the amount of $1,116.75.[5]

The Debtors did not appeal or otherwise contest the Default Judgment.

The Debtors filed for protection under chapter 7 of the bankruptcy code on December 11, 2003, and, on April 19, 2004, the Plaintiff initiated an adversary proceeding against them to obtain a determination that the debt arising from the Default Judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (B). The Plaintiff moved for summary judgment, and, on February 11, 2005, the court ruled that the debt was not excepted from discharge as a matter of law under § 523(a)(2)(A), but that it was under § 523(a)(2)(B). The court determined that the findings in the Default Judgment satisfied each of the elements of § 523(a)(2)(B), and that those findings were binding on the court by the application of collateral estoppel

---

[4] Admitted in paragraph 5 of the Debtors' Answer to the Plaintiff's Complaint. Appellants' Appendix, p. 9.

[5] Appellants' Appendix, p. 26.

and under the *Rooker-Feldman* doctrine. In subsequently denying the Debtors' Motion to Reconsider, the court reiterated its position that the *Rooker-Feldman* doctrine precluded the re-litigation of the Circuit Court's finding of fraud.

### III. DISCUSSION

The Debtors raise four issues in this appeal: (1) whether the findings in the Default Judgment are entitled to collateral estoppel effect; (2) the extent of that effect, *i.e.*, whether the findings contained in the Default Judgment satisfy the requirements of § 523(a)(2)(B); (3) whether the application of the *Rooker-Feldman* doctrine to the Default Judgment supports a determination of nondischargeability under § 523(a)(2)(B); and (4) whether the punitive damages awarded in the Default Judgment are nondischargeable. The Debtors maintain that the court erred when it answered all of these questions in the affirmative.

Because we find that the Default Judgment is not entitled to collateral estoppel effect and that the *Rooker-Feldman* doctrine does not apply under these circumstances, issues (2) and (4) are moot.

**Collateral Estoppel**

The court correctly held that the preclusive effect of a state court judgment in a subsequent federal case is determined by reference to state law.[6]

> It has long been established that [28 U.S.C.] § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effects of state judgments. Rather, it goes beyond the common law

---

[6] *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *See also*, *Migra v. Warren City School Dist. Board of Ed.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

and commands a federal court to accept the rules chosen by the state from which the judgment was taken.[7]

But we disagree with the court's conclusion that default judgments have collateral estoppel effect under Illinois law.

Admittedly, Illinois law is not crystal clear on this issue,[8] and the case on which the court relied to conclude that collateral estoppel applies to default judgments could be interpreted to support its conclusion. However, we believe it would be more consistent with the current status of Illinois law to decline to give collateral estoppel effect to default judgments.

The court relied on *Sawyer v. Nelson*.[9] In *Nelson*, the Illinois Supreme Court considered whether judgment creditors who had obtained a judgment in an action based on trover and malice could collaterally estop the judgment debtor from asserting in a later proceeding that malice was not the "gist" of that action.[10] The judgment in the prior action did not indicate on which count or cause of action it was based. Accordingly, the Illinois Supreme Court held that the judgment debtor would not be prevented from denying malice in the later proceeding because "it did not appear on the face of the record and was not shown by extrinsic evidence that the precise question at issue was raised and determined" in the earlier proceeding.[11]

---

[7] *Marrese*, 470 U.S. at 380 (citing *Kremer*, 456 U.S. at 481-82).

[8] *See In re Nikitas*, 2005 WL 1331211 (Bankr. N.D. Ill. 2005) (discussing and exploring the equivocal status of Illinois law on the collateral estoppel issue).

[9] 43 N.W. 728 (Ill. 1896)

[10] *Id*. at 728.

[11] *Id*.

Although the judgment in the prior action had been obtained by default, the *Nelson* court did not specifically discuss the default nature of the prior judgment nor how this circumstance would have affected its analysis of the plaintiff's estoppel argument had the judgment been unambiguous on its face. Standing alone, this distinction might not be enough to convince us that *Nelson* does not, in fact, reflect the state of Illinois law on this subject. But the precedential value of *Nelson* is limited by a more recent (and apparently the only) Illinois Supreme Court case directly addressing (albeit in dicta) the applicability of collateral estoppel to default judgments.

In *Housing Authority for LaSalle County v. Young Men's Christian Association of Ottawa*,[12] the Illinois Supreme Court noted without further comment that several courts had determined that "default judgments have limited preclusive effects under the doctrine of collateral estoppel."[13] (Despite the use of the word "limited," all of the cases cited by the *YMCA* court hold that collateral estoppel does not apply at all to default judgments.) The *YMCA* court appears to have made that comment only to emphasize a distinction between collateral estoppel and *res judicata* – a doctrine that the *YMCA* court observed "always" follows from default judgments – but we find the statement to be persuasive evidence of the Illinois Supreme Court's position on the collateral estoppel/default judgment issue, especially considering that it would be highly unlikely that the court would recite these cases <u>and</u> a law review article

---

[12] 461 N.E.2d 959 (Ill. 1984) ("*YMCA*").

[13] *Id.* at 963. (citing *Grip-Pak, Inc., v. Illinois Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir. 1982), *In re McMillan*, 579 F.2d 289, 292-93 (3rd Cir. 1978).

arguing for the abolition of collateral estoppel for default judgments[14] if there was Illinois Supreme Court precedent to the contrary.[15]

Therefore, we find that collateral estoppel does not apply to default judgments under Illinois law. Consequently, the court's grant of summary judgment, which was based on the application of collateral estoppel to the Default Judgment, must be reversed and the case remanded for a trial on the merits of the Plaintiff's complaint.

We note that reversal would still be necessary here even if collateral estoppel did apply to default judgments under Illinois law because the Circuit Court's findings in the Default Judgment are insufficient to establish a claim under § 523(a)(2)(B).

To prevail under § 523(a)(2)(B), the Plaintiff has to establish by a preponderance of the evidence that the Debtors obtained money from her (1) by the use of a statement in writing that was materially false; (2) that pertained to their business's financial condition; (3) on which she *reasonably* relied; and (4) that the Debtors made with the intent to deceive the Plaintiff. 11 U.S.C. § 523(a)(2)(B).

---

[14] *Collateral Estoppel in Default Judgments: The Case for Abolition*, 70 Columb. L. Rev. 522 (1970).

[15] *Cf.*, *In re Paternity of Rogers III*, 697 N.E.2d 1193, 1197 (Ill. App. Ct. 1998). The Plaintiff relies heavily on *Rogers* in support of her argument that Illinois law gives collateral effect to default judgments, and the Plaintiff's argument is consistent with the decision of the Fifth Circuit Court of Appeals in *In re Caton*, 157 F.3d 1026, 1028-29 (5th Cir. 1998), which also relied on *Rogers* to reach the same conclusion. *In re Caton*, 157 F.3d 1026, 1028-29 (5th Cir. 1998). We respectfully disagree with the *Caton* court, however, and find *Rogers*'s statement that "the defensive use of collateral estoppel may be applied to bar relitigation of [an] issue even where a default judgment has been entered provided no injustice results from the application of the doctrine," to be unpersuasive here because it (1) comes from a lower Illinois court, (2) is dicta, and (3) is inapplicable because this case involves an offensive use of collateral estoppel.

The Plaintiff relied on the Default Judgment to establish all of these elements as a matter of law, but the Default Judgment only stated that the Debtors committed "fraud," without any findings or discussion of the reasonableness of the Plaintiff's reliance. The Plaintiff's state law complaint was also silent on that issue.

Those omissions are critical because a finding of reasonable reliance cannot be inferred from a bald finding of fraud under Illinois law. We have not found, nor have the parties identified – in the pleadings or at oral argument – any clear statement of Illinois law on the degree of reliance necessary to establish fraud. Some cases indicate that reasonable reliance is required,[16] while others only require a "right to rely" or justifiable reliance.[17] And at least one Illinois Supreme Court case has recited the elements of fraud without any mention of the degree of reliance required.[18]

---

[16] *See, e.g.*, *LaCola v. U.S. Sprint Communications*, 946 F.2d 559, 567-68 (7th Cir. 2001) (finding that Illinois law requires reasonable reliance to establish fraud)*; Roda v. Berko*, 81 N.W.2d 912, 914 (Ill. 1948) (reliance must be "reasonable"). *See also*, *Rirapelli v. Advanced Equities, Inc.*, 813 N.E.2d 1138, 1142 (Ill. App. Ct. 2004) (stating that reasonable reliance is an element of Illinois common law fraud and noting that the terms "justifiable" and "reasonable" with regard to reliance in a fraud claim are used interchangeably).

[17] *See, e.g*, *AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1041-42 (7th Cir. 1990) (concluding, after an extensive examination of Illinois law, that a plaintiff's reliance on a representation only need be justifiable to support a cause of action for fraud); *Soules v. General Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980) (stating that reliance by the plaintiff must be "justified, *i.e.*, he must have had a right to rely").

[18] *See, e.g.*, *Bd. of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 428, 452 (Ill. 1989).

Thus, in the absence of a definitive statement in Illinois law on the degree of reliance required for fraud, the Circuit Court's bald finding of fraud would be insufficient to establish all of the elements of § 523(a)(2)(B).[19]

### *Rooker-Feldman* **Doctrine**

The court's order cannot be affirmed on the alternate basis cited for the court's decision – the *Rooker-Feldman* doctrine – because that doctrine is inapplicable here. Noting that many courts have erroneously used the doctrine to augment preclusion doctrines (such as the use proposed here), the Supreme Court recently clarified the limited scope of the doctrine:[20]

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced

---

[19] One possible source for the court's error on this point is the court's reliance on *O'Melveny & Myers v Federal Deposit Insurance Corporation*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), for the proposition that the definition of fraud under § 523(a)(2)(B) is determined by reference to state law. *O'Melveny & Myers* does not stand for that proposition; rather, it holds that state law controls state law causes of action, even though a governmental entity (the FDIC) is the plaintiff. Moreover, unlike § 523(a)(2)(A), § 523(a)(2)(B) does not rely on an extrinsic definition of fraud, or even use the term fraud. Instead, § 523(a)(2)(B) lists the elements necessary to establish the particular brand of fraud for a determination of nondischargeability under that provision.

We note tangentially that the definition of fraud under § 523(a)(2)(A) is determined by reference to general common law principles and is set forth in the Supreme Court decision of *Field v. Mans*, 516 U.S. 59, 79 n. 9, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995).

[20] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)

and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Thus, this case simply does not present a situation covered by the *Rooker-Feldman* doctrine – the state court losers (the Debtors) are not trying to obtain a review and a rejection of the Default Judgment; to the contrary, the state court winner (the Plaintiff) is trying to offensively use the Default Judgment to establish the basis for a derivative claim, *i.e.*, a determination of nondischargeability. And that use of a state court judgment falls clearly within the ambit of the collateral estoppel doctrine.

## Punitive Damages

As discussed above, the dischargeability of the punitive damage portion of the Default Judgment is a moot issue in light of our rulings herein.[21]

## IV. CONCLUSION

For the reasons stated above, we reverse the bankruptcy court's order granting summary judgment in favor of the Plaintiff on the complaint to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(B). The case is remanded for a trial on the merits of the Plaintiff's complaint.

---

[21] Additionally, it does not appear that the Debtors properly preserved this argument for appeal.