## IN RE BYRAN
### No. 2037

February 4, 1925.                                      232 Pac. 776.

1. GUARDIAN AND WARD — PETITION SEEKING APPOINTMENT AS GUARDIAN HELD TO STATE FACTS SUFFICIENT TO GIVE JURISDICTION.

Petition seeking appointment as guardian of person and estate of a minor, containing jurisdictional facts required by Rev. Laws, sec. 6150, stated facts sufficient to give court jurisdiction.

2. GUARDIAN AND WARD—DIVORCE OF FATHER NOT AN INSUPERABLE OBJECTION FOR APPOINTMENT AS GUARDIAN OF MINOR.

That the father is a divorced person is not an insuperable objection under Stats. 1923, c. 4, for appointment as guardian of a minor.

3. GUARDIAN AND WARD—PARENT'S FITNESS AS GUARDIAN AT TIME OF HEARING PETITION FOR APPOINTMENT A DETERMINING FACTOR.

Determining factor in proceedings for appointment of parent as guardian of minor is parent's fitness as a guardian at time of hearing of petition.

4. GUARDIAN AND WARD—FATHER'S MISCONDUCT, STANDING ALONE, DOES NOT PRECLUDE HIS APPOINTMENT AS GUARDIAN AFTER A DIVORCE.

That father seeking appointment as guardian of a minor has been guilty of misconduct does not, standing alone, preclude his appointment after a divorce.

5. GUARDIAN AND WARD—REFUSAL TO APPOINT DIVORCED PARENT DENYING PATERNITY OF CHILD AS GUARDIAN HELD PROPER. ·

Court did not abuse its discretion in appointing maternal aunt as guardian of child on mother's death, in preference to father, who had been divorced from the mother, where court found that he had made no material contribution to support of child after divorce, and that he had failed to pay for medical attendance during illness of child, and that on three occasions he denied paternity of child.

See 28 C. J. sec. 46, p. 1079, n. 23, 26, 31; sec. 67, p. 1085, n. 45.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Petition by Frank Robert Byran and Phœbe Gibeau and Elizabeth MaGoffin, seeking appointment as guardian of the person and estate of John Robert Byran, a minor. The court ordered that letters of guardianship be issued to Elizabeth MaGoffin, and the other petitioners appeal. **Affirmed.**

*Huskey & Kuklinski,* for Appellants:

Surviving parent is entitled to custody of minor child.

Divorced parent to whom custody was granted may appoint testamentary guardian, but no such appointment was made in this case. Rev. Laws, 6153, as amended Stats. 1923, c. 4; Allen's Estate, 124 Pac. 237. Divorce decree granting custody to one parent does not act at bar for all time, but only during life of one to whom custody was decreed. On that parent's death, right of survivor becomes paramount to all others (In Re Blackburn, 41 Mo. App. 622; In Re Forrester, 123 Pac. 283) unless unfitness is shown. Harper v. Tipple, 184 Pac. 1006. Fit parent should not be punished by deprivation of parental rights. State v. Richardson, 40 N. H. 274.

Father may show his ability to care for child, though at former time he was unable to do so. In Re Forrester, supra.

When survivor on cross-examination is compelled to testify to facts equally known to survivor and decedent, benefit of statute is waived and subject is open to full explanation on redirect. Fox v. Barrett's Estate, 75 N. W. 440.

*M. J. Scanlan,* for Respondent:

Court may deprive father of custody of his minor child if he willfully neglects to provide necessary medical attention. Heinemann's Appeal, 32 Am. Rep. 532.

No person shall be allowed to testify when other party to transaction is dead. Rev. Laws, 5419. But disinterested witnesses may testify that certain declarations were made, not to prove their truth or falsity. 1 Greenleaf (14th ed.), 171.

When admission is undisputed it is conclusive on party by whom made. 22 C. J. 420.

Statutory provision favoring granting guardianship to surviving parent is not absolute. Court will do what it considers for best interest of child. 9 R. C. L. 475.

Parent may lose right to custody by misconduct. In Re Lally, 16 L. R. A. 683. Though father's right to custody revives on death of divorced wife, it must be shown that minor's interests will be best conserved by recognizing father's right. Appellant court will not

interfere unless abuse of discretion is shown. When all evidence sustains appointment, decision will not be disturbed. In Re Lewis, 137 Cal. 682; In Re Hawkins, 192 Pac. 30; 28 C. J. 1008.

## OPINION

By the Court, SANDERS, J.:

In October, 1923, three separate petitions were filed in the court below, on the probate side thereof, wherein each petitioner sought appointment as guardian of the person and estate of John Robert Byran, an infant two years of age. No issue was joined upon either petition, and the three came on to be heard together and were considered as one proceeding. The mother of the child, Katherine Pearl Byran, a resident of Washoe County, died intestate therein on the 11th day of October, 1923, leaving an insurance policy in the Women's Benefit Association of the Maccabees for the sum of $1,000, payable, in the event of her death, to her said child, John Robert Byran, which constitutes his entire estate. The first petition filed was that of the father of the child, Frank Robert Byran, the second that of Elizabeth MaGoffin, a maternal aunt of the child, and the third that of Phœbe Gibeau, its paternal grandmother. A large amount of proof was offered to prove the qualifications of each petitioner for the trust. The record discloses that the petition of the father was denied, for the reason, among other things, that he was not a fit or suitable person to be appointed guardian. The petition of the grandmother was denied upon the assumption that it would be for the best interest of the child to appoint Elizabeth MaGoffin as guardian, and also because it was the dying wish of the mother that her sister, Elizabeth MaGoffin, should have the custody and care of her child. Being a competent and suitable person for the trust, it was ordered that letters of guardianship issue to Elizabeth MaGoffin, upon her filing a bond in the penal sum of $1,000, to be approved by the court, and upon her subscribing and filing the usual oath of

office. The father and the grandmother bring this appeal from the order and ask its reversal upon two grounds: One, that the petition of Elizabeth MaGoffin did not state facts sufficient to give the court jurisdiction of her application. The other, that the court abused its discretion in appointing the maternal aunt as guardian in preference to the father or the grandmother of the child.

1. The objection that the petition of Elizabeth MaGoffin does not state the necessary facts to entitle her to the guardianship of the minor child is without merit. Her petition contains the jurisdictional facts required by the statute, section 6150, Revised Laws. We regard the proceeding as a contest between the father of the child and its maternal aunt. The application of the grandmother was apparently a device to prevent the appointment of the aunt. She did not oppose the petition of her son, the father of the child. On the contrary, as a witness in his behalf she made it appear that he was in all respects a competent and suitable person to be intrusted with the office of guardian, and that her claim to the custody and care of the child was secondary to that of its father. The petition of the father is grounded necessarily upon the statute (Statutes 1923, p. 3) which provides, among other things, that the father and mother, except as provided, being each competent to transact his or her own business, and not otherwise unsuitable, shall be entitled to the guardianship of the minor.

The undisputed facts as found by the trial court are as follows: In April, 1922, Katherine Pearl Byran, the mother of the minor child, was granted a divorce from Frank Robert Byran, its father, on the ground of extreme cruelty, in the district court of Washoe County. The decree, among other things, awarded the custody of the child to its mother and required the father to pay to her the sum of $25 per month for the support of the child. The court found that the father failed and neglected to comply with the order of the court in the divorce action, and that he contributed nothing to the

support of the child after divorce except the sum of $105. The court further found that the father after divorce failed to pay for medical attendance during the illness of the child, and that on three occasions he denied the paternity of the child. From these facts the court concluded that as a matter of law the father was not a suitable person to be appointed guardian.

. 2. That the father is a divorced person is not an insuperable objection by the standard prescribed by our statute. If it were so, courts would be debarred from ever designating a divorced parent as a guardian of his or her children.

3. The failure and neglect of the father to contribute $25 per month for the support of his child after divorce, standing alone, does not preclude his appointment after the death of the mother, provided he is competent to transact his own business, and is not otherwise unsuitable for the trust. The continued failure of the father to comply with the decree may, no doubt, be shown as one of the items of evidence bearing upon the question of his competence for guardianship. But, as said by the court In Re Forrester, 162 Cal. 493, 123 P. 283, it is not the same thing as incompetency nor does it in and of itself require a conclusion that the parent is incompetent. The past failure of a parent to provide for his child may well coexist with a present ability to fully discharge all the duties of guardianship. The determining factor in a case of this character is the parent's fitness for guardianship at the time of the hearing of the petition. In Re Green, 192 Cal. 714, 221 P. 903.

4, 5. The mere fact that the father has once been guilty of misconduct does not, standing alone, preclude his appointment after a divorce. In Re Wagner, 75 Misc. Rep. 419, 135 N. Y. S. 686. But in the present case it was expressly found that the father at least on three occasions denied the paternity of his child. The evidence discloses that the father, in August, 1923, in a proceeding in the divorce action to compel him through the process of contempt to contribute to the support of his child, stated in open court, under oath, that he was

not the father of the child and that he would go to jail before he would pay for its support. Such denial is sufficient to justify the conclusion that the father is not a suitable person for guardianship. The father now insists that his denial of the paternity of his child was not true; that he is its father and at all times entertained for it a sincere parental affection and had its welfare at heart; that he was provoked into making the statement he did by the mother's treatment of him; and that it was the aggravated differences then existing between them which angered him to such an extent that he swore he was not the father of the child and would suffer punishment before he would pay for its support. The mother is now dead. She cannot speak. Now the father openly admits that he was willing that his child should be smirched, that he might show his contempt for the mother. We cannot believe that a parent who truly loved his child, and had its welfare at heart, would be guilty of such a thing.

In Griffin v. Sarsfield, 2 Dem. Sur. (N. Y.) 4, it was held that a judgment of divorce in favor of the wife (who later died) for cruel treatment of herself and children by the husband, together with the expression of a doubt by the petitioning father as to the paternity of the child, which was of tender years, and whose guardianship he was seeking, sufficiently showed unsuitableness of the father to receive appointment as guardian.

In Re McChesney, 106 Wis. 315, 82 N. W. 149, it was held that a father who was divorced for cruel treatment, and who expressed a suspicion as to the paternity of his minor children, was not a suitable person to act as guardian of such children, within a statute entitling him so to act if suitable, although he had remarried, had considerable property, a good home, enjoyed the confidence and respect of his neighbors, and had been of good conduct.

It is perhaps to be regretted that this court cannot so condition the order of appointment of Elizabeth MaGoffin, the maternal aunt, as guardian by modifying

the order so that the father could bestow upon the child the love he now professes; but we do not feel that we can do more than confirm the appointment of the aunt. As time passes we trust the disappointed applicants for guardianship will be given abundant opportunity to show the sincerity of their positions in respect to the future welfare of the child.

The order of appointment of Elizabeth MaGoffin as guardian of the person and estate of John Robert Byran is affirmed.