# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3377

_____

| | |
|---|---|
| Heidi Ahlborn, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Arkansas Department of Human | * |
| Services; Kurt Knickrehm, Director | *   Appeal from the United States |
| of the Arkansas Department of Human | *   District Court for the Eastern |
| Services; Wayne Olive, Director of the | *   District of Arkansas. |
| Third Party Liability Unit; Roy Jeffus, | * |
| Interim Director, Division of Medical | * |
| Services of the Arkansas Department | * |
| of Human Services, | * |
| | * |
| Appellees. | * |

_____

Submitted: April 13, 2004
Filed: February 9, 2005

_____

Before MORRIS SHEPPARD ARNOLD, RILEY, and COLLOTON, Circuit
Judges.

_____

COLLOTON, Circuit Judge.

Heidi Ahlborn appeals the district court's grant of summary judgment in favor
of the Arkansas Department of Human Services and employees thereof (collectively

"the State") in a dispute concerning the extent to which her recovery from a tortfeasor may be taken by the State as reimbursement for the cost of medical care and services provided to Ahlborn by the Medicaid program. After careful review of the various statutes involved, we conclude that Ahlborn has the better of the argument, and we therefore reverse.

I.

Ahlborn was seriously injured in a motor vehicle accident on January 2, 1996. As a result of this accident, she suffered severe personal injuries, especially to her head, which required extensive medical care and rendered her permanently disabled. While under treatment, Ahlborn applied and qualified for medical benefits under the Arkansas Medicaid program, administered in the State by appellee Arkansas Department of Human Services ("ADHS"). In applying for benefits, Arkansas law required Ahlborn to assign to ADHS her "right to any settlement, judgment, or award" she might receive from third parties, "to the full extent of any amount which may be paid by Medicaid for the benefit of the applicant." Ark. Code Ann. § 20-77-307(a). In total, ADHS provided Medicaid benefits to or on behalf of Ahlborn in the amount of at least $215,645.30, which fully relieved her debt to health care providers.

The parties agree that Ahlborn's injuries gave rise to claims other than past medical care, including loss of earnings and working time, pain and suffering, and permanent impairment of ability to earn in the future. The parties also stipulated that an estimate of Ahlborn's damages totals approximately $3,040,708.12. However, in mid-2002, Ahlborn was paid $550,000 following a compromise settlement reached through negotiations with her insurance company and third parties allegedly liable for her injuries. This was a lump-sum settlement that did not allocate Ahlborn's recovery among her various claims. The State was not a party to the settlement. The Director of ADHS asserted a lien against Ahlborn's settlement for the amount of benefits

ADHS provided, pursuant to Arkansas Code Sections 20-77-301 through 20-77-313 (third-party liability).

Ahlborn brought suit seeking a declaratory judgment, arguing that ADHS can only recover that portion of her settlement representing payment for past medical expenses. The parties characterize the sole issue in this case as one of statutory construction: whether federal Medicaid statutes, which provide for the assignment of rights to third-party payments, but prohibit placing a lien on a Medicaid recipient's property, limit the State's recovery to only those portions of the payments made for medical expenses. The parties have entered into a stipulation regarding damages, whereby the State will recover $215,645.30 if it prevails on the statutory construction issue, but only $35,581.47 if Ahlborn prevails. This first figure represents the total amount the parties stipulated the State paid in relation to Ahlborn's care. The parties stipulated that the second figure, which represents 16.5 percent of this total amount, is a fair representation of the percentage of the settlement constituting payment by the tortfeasor for past medical care.

The parties filed cross-motions for summary judgment, and the district court granted the State's motion. The court interpreted the relevant federal statutory provisions to mean that the State may recover from Ahlborn's settlement the sum stipulated as the total amount of benefits provided under the Medicaid program, regardless whether the settlement funds represent payments for the cost of medical services. We review the grant of summary judgment *de novo*, applying the same standard as the district court. *Murphey v. City of Minneapolis*, 358 F.3d 1074, 1077 (8th Cir. 2004). We will affirm the grant of summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Shelter Ins. Cos. v. Hildreth*, 255 F.3d 921, 924 (8th Cir. 2001).

II.

The Medicaid program was established in 1965 by Title XIX of the Social Security Act ("the Act"), codified at 42 U.S.C. § 1396-1396v. The primary purpose of the program is to provide federal financial assistance to States that elect to reimburse certain costs of medical treatment for needy individuals. *See Harris v. McRae*, 448 U.S. 297, 301 (1980). States voluntarily agree to participate in the program, but must comply with federal requirements once they do so. *Id*. It is often said that Congress wanted Medicaid to be a "payer of last resort, that is, other available resources must be used before Medicaid pays for the care of an individual enrolled in the Medicaid program." S. Rep. No. 99-146, at 312 (1985), *reprinted in* 1986 U.S.C.C.A.N. 42, 279. The sole issue presented by the parties in this case is whether the Arkansas statutory scheme for recovering Medicaid payments comports with the federal statutes governing how state Medicaid recovery programs must operate. The essential disagreement is whether the State may recover from Ahlborn's settlement any amount beyond that stipulated to be expenses for medical care.

Under Arkansas law, applicants for Medicaid benefits "automatically assign" their rights to "any settlement, judgment, or award which may be obtained against any third party to [ADHS] to the full extent of any amount which may be paid by Medicaid for the benefit of the applicant." Ark. Code Ann. § 20-77-307(a). "The assignment shall be considered a statutory lien on any settlement, judgment, or award received by the recipient from a third party." *Id*. § 20-77-307(c). Further, Arkansas Code Section 20-77-302(a) provides that when a Medicaid recipient brings a claim against a liable third party, "any settlement, judgment, or award obtained is subject to the division's claim for reimbursement of the benefits provided to the recipient under the medical assistance program." Arkansas thus requires recoupment from, and places a lien on, the entirety of third-party payments – not just that portion of third-party payments made for medical care.

-4-

Ahlborn argues that the Arkansas scheme conflicts with federal law. She relies on 42 U.S.C. § 1396p(a)(1), which prohibits (with certain exceptions not applicable here) the imposition of a lien "against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan[.]" This provision, sometimes referred to as the "anti-lien statute," generally prevents a State from attaching property of a recipient to reimburse the State for benefits paid under a state Medicaid plan. Under the statute's implementing regulation, "property" is defined as "the homestead and all other personal and real property in which the recipient has a legal interest." 42 C.F.R. § 433.36(b).

The State argues that the Arkansas statutory lien "on any settlement, judgment, or award received by the recipient from a third party" does not conflict with the federal anti-lien statute, because the settlement that Ahlborn received from the tortfeasor is not Ahlborn's property. The State contends that because Ahlborn assigned to the State her right to any settlement as a condition of receiving Medicaid benefits, the settlement remains property of the tortfeasor until the State is fully reimbursed for all funds expended on Ahlborn's medical care. This appears to be the reasoning adopted by the majorities of two divided state court decisions on which the State relies. *Houghton v. Dep't of Health*, 57 P.3d 1067, 1069 (Utah 2002); *Wilson v. State*, 10 P.3d 1061, 1066 (Wash. 2000).

We believe that Ahlborn's right to a settlement that may be received from a third party, which the Arkansas statute required her to assign to the State, was Ahlborn's "property." Her unliquidated tort claim, in other words, is a form of "personal . . . property in which the recipient has a legal interest." 42 C.F.R. § 433.36(b). "It is basic property law that a chose in action is personal property," and that "the right to sue for damages is property." *Gregory v. Colvin*, 363 S.W.2d 539, 540 (Ark. 1963). The Arkansas assignment statute, moreover, contemplates that the lien arises *after* Ahlborn receives her settlement from the tortfeasor: "The assignment shall be considered a statutory lien on any settlement, judgment, or award *received*

-5-

*by the recipient from a third party.*"  Ark. Code Ann. § 20-77-307(c) (emphasis added).  Thus, whether the State's assignment and lien act upon Ahlborn's cause of action or the settlement she received from the third-party tortfeasors, we see no basis in the governing federal regulations or the common law of property to conclude that the assignment or lien acted upon something other than Ahlborn's property.

We do not believe, moreover, that the State may circumvent the restrictions of the federal anti-lien statute simply by requiring an applicant for Medicaid benefits to assign property rights to the State before the applicant liquidates the property to a sum certain.  If the State could proceed in that manner, then we do not see what limiting principle would preclude the State from requiring a Medicaid applicant to assign to the State other interests in property – such as future wages, lottery winnings, or real property – in order to reimburse the State for health care expenditures under Medicaid.  This sort of broad ranging assignment requirement clearly would conflict with the federal anti-lien statute.  The State, at oral argument, disclaimed an ability to require a Medicaid applicant to assign unlimited property interests, and relied instead on a narrower justification for the Arkansas statutory lien on recovery from tortfeasors.  The State ultimately asserts that because other federal statutes *require* the State to impose the statutory lien created by Section 20-77-307(c), the Arkansas statute cannot conflict with the federal anti-lien statute.[1]

---

[1]The State also argues on brief that Ahlborn's unliquidated cause of action is a "resource" that should be considered in determining whether she is eligible for Medicaid benefits in the first place.  *See* 42 U.S.C. §§ 1382, 1382b, 1396p(e)(5).  The State complains that Ahlborn should not be allowed to "exclude the value of her tort claim to receive benefits and later shield the same resource to defeat reimbursement." (Appellee Br. at 18).  We view this argument as largely a red herring, because the State already determined that Ahlborn was eligible for Medicaid benefits, and her eligibility is not at issue in this lawsuit.

In any event, the State's effort to equate "resources" available to an applicant in the eligibility determination with "property" that is shielded from state recovery

-6-

The federal statutes in question provide that a state Medicaid plan must provide that the State acquires the rights of a Medicaid beneficiary to certain payments by third parties, 42 U.S.C. § 1396a(a)(25)(H), and require that a beneficiary assign to the State certain rights to payment from third parties, 42 U.S.C. § 1396k(a)(1). The first statute provides:

A State plan for medical assistance must –

. . .

(25) provide –

. . .

(H) that to the extent that payment has been made under the State plan for medical assistance in any case where *a third party has a legal liability to make payment for such assistance*, the State has in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services

efforts by the anti-lien statute is not supported by federal or state law. "Resources" is defined by the federal regulation that implements 42 U.S.C. § 1382b as "cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). An unliquidated personal injury cause of action cannot be sold or assigned, *Mallory v. Hartsfield, Almand & Grisham, LLP*, 86 S.W.3d 863, 866 (Ark. 2002), so at the time she applied for benefits, Ahlborn lacked the power to convert her cause of action to cash for support and maintenance. The Arkansas administrative code, moreover, defines "resource" as any real or personal property "available to an individual to meet his needs," and specifies that "[o]nly those resources currently available, or for which the individual has the legal ability to make available, will be considered." Code of Ark. Rules 016.20.001, Medical Services Policy Manual § 11301 (June 1, 2002). Thus, although the cause of action was "property," 42 C.F.R. § 433.36(b), it was not a "resource." *Cf. Smith v. Ariz. Long Term Care Sys.*, 84 P.3d 482, 487 (Ariz. Ct. App. 2004).

furnished to an individual, the State is considered to have acquired the rights of such individual *to payment by any other party for such health care items or services*.

42 U.S.C. § 1396a(a)(25)(H) (emphasis added).

The second provision states:

(a) For the purpose of assisting in the collection of medical support payments . . . a State plan for medical assistance shall –

(1) provide that, as a condition of eligibility for medical assistance . . . to an individual . . . the individual is required –

(A) to assign the State any rights . . . *to payment for medical care from any third party*;

. . .

(C) to cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party *who may be liable to pay for care and services* available under the plan . . . .

42 U.S.C. § 1396k(a)(1)(A) (emphasis added).

We believe a straightforward interpretation of the text of these statutes demonstrates that the federal statutory scheme requires only that the State recover payments from third parties to the extent of their legal liability to compensate the beneficiary *for medical care and services* incurred by the beneficiary. Under § 1396a(a)(25)(H), a state Medicaid plan must include provisions specifying that, when the State provides medical benefits to an applicant, "the State is considered to

have acquired the rights of such individual to *payment by any other party for such health care items or services*." (emphasis added). This acquisition of rights occurs only in cases where "a third party has a legal liability to make payment for [medical] assistance." *Id.* Section 1396k(a)(1)(A) similarly requires that an applicant assign to the State her right "to *payment for medical care* from any third party." (emphasis added). Both statutes are thus limited to rights to third-party payments made to compensate for medical care.

Taking the three federal statutes together, we agree with the Supreme Court of Minnesota that the plain meaning of each achieves a harmonious statutory scheme:

> The anti-lien provision protects the personal property of a medical assistant recipient – here, [the plaintiff's] cause of action – from a state's effort to recover for medical expenses. The assignment transfers to the state the recipient's right to recover medical expenses, and therefore the ability to pursue directly potentially liable third parties for medical assistance expenses paid. The anti-lien provision protects all of a recipient's nonassigned rights to recover. The recovery provision, on the other hand, requires that the state pursue the third parties for medical expenses paid by the state, and the state does so under the assignment.

*Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 13 (Minn. 2002). Where, as here, the recipient pursues the third party directly for medical expenses, the recovery provision also allows the State to establish a lien to the extent that a settlement or award constitutes payment by the third party for medical expenses incurred by the recipient.

The State nonetheless urges us to adopt the view espoused by the federal Health Care Financing Administration, and upheld by the Departmental Appeals Board of the Department of Health and Human Services ("HHS") in two adjudications during the 1990s. *See Calif. Dep't of Health Servs.,* D.A.B. No. 1504, 1995 WL 66334 (HHS Jan. 5, 1995) ("*Calif. Dep't*"); *Wash. State Dep't of Soc. and*

*Health Servs.*, D.A.B. No. 1561, 1996 WL 157123 (HHS Feb. 7, 1996) ("*Wash. State Dep't*"). These adjudications conclude that the federal government can require States to attempt to recover from third-party payments beyond those made for medical care.[2]

The parties dispute whether the HHS decisions are entitled to deference under the doctrine of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), as an agency's interpretation of an ambiguous federal statute that it is charged with administering. While we agree that an agency's formal adjudication may be entitled to deference in an appropriate case, *cf. Christensen v. Harris County*, 529 U.S. 576, 587 (2000), the principles of deference apply only when a statute is ambiguous and the agency advances a reasonable interpretation of the statute. In this case, we reject the agency's interpretation as inconsistent with the plain language of the statute.

The HHS adjudications cite three reasons why States can be required to attempt to recover funds from those third-party payments for damages other than the cost of medical care and services. First, HHS reasoned that "[i]n cases where a third party has caused the need for medical care and is liable for its payment, the Act looks to that third party to reimburse the public." *Wash. State Dep't*, D.A.B. No. 1561, at 8; *Calif. Dep't,* D.A.B. No. 1504, at 10. While we agree that the Act looks to third parties to reimburse taxpayer funds, HHS supports its view by noting that States are

---

[2]During the 1990s, some States concluded that a policy of attempting to recover from Medicaid recipients all third-party liability settlements and payments was not the best method to conserve public funds. The State of California, for example, concluded that allowing victims to share in awards "created an incentive to seek out and pursue liable third parties, thereby maximizing pursuit and shifting initial costs from California to the victim." D.A.B. No. 1504, at 13. In decisions involving the California and Washington state Medicaid programs, however, HHS disallowed federal financial participation on the ground that anything less than 100 percent state recovery of third-party liability settlements and payments was inconsistent with federal law.

required under 42 U.S.C. § 1396a(a)(25)(B) to "seek reimbursement for such assistance to the extent of such legal liability." *Wash. State Dep't*, D.A.B. No. 1561, at 8; *Calif. Dep't,* D.A.B. No. 1504, at 10. The phrase "such legal liability," however, refers back to "legal liability" in § 1396a(a)(25)(A), which makes clear that this is "the legal liability of third parties . . . *to pay for care and services available under the plan*[.]" Where, as here, the State seeks reimbursement for amounts payable to the Medicaid recipient for other damages such as lost wages, the text of the Act cited by HHS does not authorize recovery.

Second, HHS concluded that it is reasonable for the government to condition the availability of Medicaid funds on a recipient's agreement to reimburse Medicaid to the extent of a third party's liability. Therefore, according to HHS, "Medicaid has superior status to the recipient in relation to the tortfeasor to recover costs Medicaid incurred on behalf of the recipient on the condition that it would be reimbursed if there was a liable third party from whom a recovery was collected." *Wash. State Dep't*, D.A.B. No. 1561, at 8; *Calif. Dep't,* D.A.B. No. 1504, at 11. While the condition described may well be reasonable as a matter of public policy, the HHS interpretation contradicts the express statutory language. Recipients are not required under federal law to reimburse Medicaid "to the extent of the third party's liability." *Id.* Rather, recipients are only required to assign their rights to third-party payments for medical care. 42 U.S.C. §§ 1396a(a)(25)(H), 1396k(a)(1)(A). We therefore reject HHS's second reason for requiring States to recover from third-party payments portions not designated for medical care.

Finally, HHS relied on a concern that if States were limited to recovering payments from third parties for medical care and services, then recipients could prevent state recovery by intentionally manipulating the amounts paid for various claims. *Wash. State Dep't*, D.A.B. No. 1561, at 9; *Calif. Dep't,* D.A.B. No. 1504, at 11. For example, during settlement negotiations, a Medicaid recipient could agree with a third party to reduce the amount paid for medical care, but increase the amount

paid for pain and suffering. Or a recipient might attempt to recover only for damages other than past medical expenses, and thus assert that a lump-sum payment does not include funds for such expenses.

The federal statutes, of course, do not leave the States without a remedy in this situation: Through the assignment provision, a State has legal authority to pursue directly the third-party tortfeasor for medical expenses incurred by the recipient. And we do not foreclose the possibility that manipulation of settlement amounts might, in an appropriate case, provide the basis for a State to recover funds received by a Medicaid beneficiary from a third-party tortfeasor, even though they are not technically denominated payments for medical care and services. In such a circumstance, however, the recovery might be permissible because the third-party payment is properly recharacterized *as a payment for medical expenses*, despite a different label applied by the parties, not because the federal statutes authorize the State to recover *all* payments from third parties up to the amount of funds expended by the state Medicaid program. In this case, there is no dispute about which portion of Ahlborn's settlement represents payment for medical care, so the potential for manipulation of settlements provides no basis for the State to capture funds received by Ahlborn to compensate for damages other than the costs of medical care.

In the end, we are left with a federal statutory scheme that clearly requires Ahlborn to assign her rights to recover from third parties for the costs of medical care and services incurred as a result of their tortious conduct, but protects all of Ahlborn's nonassigned property from recovery by the State through the anti-lien statute. The Arkansas statutes requiring Ahlborn to assign her entire cause of action against the third-party tortfeasors, and establishing a statutory lien on settlement proceeds for matters other than medical care and services, conflict with and frustrate this federal scheme. *See Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Accordingly, we conclude that Ahlborn prevails on the question of statutory construction presented by the parties on this appeal, and that the Arkansas assignment and recovery statutes are

preempted to the extent that they require Ahlborn to assign her rights to recover third-party liability payments for matters other than the cost of her medical care and services.

*     *     *

The judgment of the district court is reversed, and the case is remanded with directions to enter judgment for the State in the amount of $35,581.47.

_____