# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 04-6042 NI

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Gary Wayne Colsen, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Gary Wayne Colsen, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff - Appellee, | * | Northern District of Iowa |
| | * | |
| v. | * | |
| | * | |
| United States of America, | * | |
| (Internal Revenue Service) | * | |
| | * | |
| Defendant - Appellant. | * | |

---

Submitted: February 11, 2005
Filed: March 25, 2005

---

Before SCHERMER, FEDERMAN and VENTERS, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

The United States of America appeals the bankruptcy court[1] order and judgment excepting from discharge certain tax liabilities of Debtor Gary Wayne Colsen ("Debtor") pursuant to 11 U.S.C. § 523(a)(1)(B)(i). We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

## ISSUE

The issue on appeal is whether the Debtor's 1040 Forms filed after the Internal Revenue Service had assessed the tax liabilities qualify as returns for purposes of dischargeability under 11 U.S.C. § 523(a)(1)(B)(i). The bankruptcy court entered summary judgment in favor of the Debtor determining that the 1040 Forms qualified as returns and that the Debtor's tax obligation was not excepted from discharge under 11 U.S.C. § 523(a)(1)(B)(i). We agree that the Debtor's 1040 Forms constitute tax returns under 11 U.S.C. § 523(a)(1)(B)(i).

## BACKGROUND

The Debtor failed to timely file income tax returns for years 1992 through 1996. In December 1997, the Internal Revenue Service prepared substitutes for returns for those years pursuant to 26 U.S.C. § 6020(b). In April 1998, the Internal Revenue Service issued notices of deficiency for tax years 1992 through 1995. In February 1999, the Internal Revenue Service issued a notice of deficiency for tax year 1996. The notices of deficiency informed the Debtor of the amounts of the tax deficiencies calculated by the Internal Revenue Service and advised the Debtor of his right to seek a redetermination of these deficiencies with the United States Tax Court. The Debtor did not respond to the deficiency notices nor seek a redetermination in

[1]The Honorable William L. Edmonds, United States Bankruptcy Judge for the Northern District of Iowa.

2

the Tax Court. In November 1998 and July 1999, the Internal Revenue Service assessed taxes, interest, and penalties against the Debtor for tax years 1992 through 1996.

In September and October of 1999, the Debtor prepared and filed 1040 Forms for tax years 1992 through 1996. The Internal Revenue Service examined the 1040 Forms and authorized partial abatements of the taxes and interest it had previously assessed against the Debtor for tax years 1992 through 1996.

On February 10, 2003, the Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code ("Bankruptcy Code"). The Debtor received a discharge in bankruptcy on May 28, 2003.

The Debtor initiated an adversary proceeding to determine the dischargeability of his federal income tax liabilities for tax years 1992 through 1998. The United States did not challenge the dischargeability of the Debtor's 1997 and 1998 income tax liabilities. The Debtor's income tax liabilities for years 1992 through 1996 remained in dispute.

The United States filed a motion for summary judgment seeking a determination that the 1040 Forms filed by the Debtor after the Internal Revenue Service had prepared substitutes for returns, issued notices of deficiencies, and assessed the tax liabilities did not qualify as returns under 11 U.S.C. § 523(a)(1)(B)(i) and that therefore the taxes were excepted from discharge. The court concluded that the 1040 Forms were returns for purposes of 11 U.S.C. § 523(a)(1)(B)(i). The court entered its order denying the United States' motion for summary judgment and determining that the Debtor's tax liabilities for tax years 1992 through 1996 were discharged. The order essentially granted summary judgment in favor of the Debtor. The United States appealed that order.

## STANDARD OF REVIEW

The facts are not in dispute. We review the bankruptcy court's entry of summary judgment *de novo*. *Pedroza v. Cintas Corp. No. 2*, ___ F.3d ___, 2005 WL 323694 (8th Cir. 2005); *Ahlborn v. Arkansas Department of Human Services*, ___ F.3d ___, 2005 WL 292502 (8th Cir. 2005); *Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 371 F.3d 397 (8th Cir. 2004). A grant of summary judgment will be affirmed if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ahlborn*, 2005 WL 292502 at *2.

## DISCUSSION

### I.  Summary Judgment May be Entered in Favor of Non-Moving Party

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56, applicable herein pursuant to Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment may be entered in favor of a party who has not requested summary judgment as long as the party against whom summary judgment is entered was given proper notice and an opportunity to respond before the entry of summary judgment. *Celotex*, 477 U.S. at 326; *Madewell v. Downs*, 68 F.3d 1030, 1048-49 (8th Cir. 1995); *Interco Inc. v. National Surety Corp.*, 900 F.2d 1264, 1268-69 (8th Cir. 1990). Consequently, the fact that the Debtor had not requested summary judgment did not preclude the bankruptcy court from entering summary judgment in his favor. By filing its motion for summary judgment, the United States was clearly aware that the issue would be considered by the court. Indeed, the United States expressly represented to the court that no material facts were in dispute and asked the court to reach a legal conclusion. The fact that the court reached the opposite legal conclusion

4

than the one sought by the United States does not change the fact that the United States had ample opportunity to present its position prior to entry of the summary judgment.

## II. Section 523(a)(1)(B)(i) of the Bankruptcy Code

### A. Taxes Exempt from Discharge

A bankruptcy discharge does not discharge an individual from a debt for a tax with respect to which a return, if required, was not filed. 11 U.S.C. § 523(a)(1)(B)(i). This is one of several categories of tax liabilities which are excepted from discharge. Also excepted from discharge are tax liabilities arising between the date of an involuntary bankruptcy petition and the entry of an order for relief; taxes entitled to priority under the Bankruptcy Code; taxes for which a required return was filed late and within two years preceding the bankruptcy petition; and a tax with respect to which the debtor made a fraudulent return or wilfully attempted to evade or defeat such tax liability. 11 U.S.C. §§ 502(f), 507(a)(2) and (8), and 523(a)(1). Income taxes which qualify for priority under the Bankruptcy Code and are consequently excepted from discharge include those for which a return was last due within three years before the filing of the bankruptcy petition; those which were assessed within 240 days before the petition date;[2] and certain taxes which were not assessed prior to the petition date and which are assessable post-petition. 11 U.S.C. § 507(a)(8). The Bankruptcy Code provisions which provide priority to certain tax liabilities and which except certain tax liabilities from discharge reflect a compromise between the interests of three competing constituencies: the government's interest in maximizing tax revenue collection; other creditors' interests in sharing in distributions from bankruptcy estates; and the debtor's interest in a fresh start. The compromise is

---

[2] This time limit is extended in the event of an offer in compromise. 11 U.S.C. §507(a)(8)(A)(ii).

designed to ensure that taxing authorities have some time to attempt to collect taxes prior to any discharge. In the event of a bankruptcy estate with assets, the taxing authorities receive distributions ahead of general unsecured creditors with respect to certain relatively recent tax liabilities. Older taxes do not receive priority, however. Otherwise taxing authorities might receive all distributions from the estate to the complete exclusion of other creditors. Honest debtors are provided relief from older tax liabilities which the taxing authorities have not collected prior to bankruptcy, despite the opportunity to do so.

## B. What is a Return?

The parties disagree as to whether the Debtor's 1040 Forms filed post-assessment qualify as returns for purposes of Section 523(a)(1)(B)(i). The statutory language does not include any qualifiers for the term "return." Therefore, an initial, plain meaning reaction to the language is that a signed 1040 Form is a return no matter when it is filed. This result is bolstered by the fact that other sections expressly refer to late returns[3] and to the timing of an assessment.[4] When Congress wanted to make the timing of a return and of assessment relevant for purposes of dischargeability it did so. By omission, timing does not appear to be a factor under Section 523(a)(1)(B)(i). Though it is appealing, the plain meaning analysis does not adequately address the complexities of the issue. We must delve deeper into the meaning of the word "return."

The word "return" is not defined in the Bankruptcy Code. Undefined terms usually are given their plain and ordinary meaning. This particular word has many meanings in its noun form, ranging from the act of sending something back to a

---

[3] 11 U.S.C. § 523(a)(1)(B)(ii).

[4] 11 U.S.C. §§ 507(a)(8)(A)(ii) and 523(a)(1)(A).

stroke in the game of tennis. In this instance, the word is used in the context of taxes. Therefore, we look to tax sources for a definition of the word.

Surprisingly, neither the United States Tax Code ("Tax Code") nor the regulations promulgated in connection therewith define the term "return." The Tax Court, however, has developed a uniformly accepted definition of a tax return which involves a four-prong analysis: (1) the document must contain sufficient data to calculate tax liability; (2) the document must purport to be a return; (3) there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and (4) the taxpayer must execute the return under penalty of perjury. *Beard v. Commissioner of Internal Revenue*, 82 T.C. 766, 777 (T.C. 1984), *aff'd,* 739 F.2d 139 (6th Cir. 1986). We believe that the application of the definition of a tax term which is universally accepted in the tax arena promotes uniformity and is appropriate in this context absent any indication to the contrary in the Bankruptcy Code.[5]

_____

[5]Congress is presumed to be aware of uniformly accepted definitions and has taken no action to define the term "return." Congress has amended Section 523 of the Bankruptcy Code governing liabilities excepted from discharge numerous times since the Tax Court enunciated the *Beard* test, which itself was based on Supreme Court precedent predating the current Bankruptcy Code. *See, e.g.*, the Criminal Victims Protection Act of 1990, Pub. L. No. 101-581, § 2 (1990), the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322 §320934 (1994), and the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394 (1994). Consequently, Congress can be presumed to have intended the use of the *Beard* definition of tax return in the context of Bankruptcy Code Section 523.

No United States Court of Appeals which has addressed the issue in this context has applied any definition of "return" other than the *Beard* test. *Moroney v. United States (In re Moroney)*, 353 F.3d 902, 905 (4th Cir. 2003); *United States v. Hatton (In re Hatton)*, 220 F.3d 1057, 1060-61 (9th Cir. 2000); *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1033-34 (6th Cir. 1999). Furthermore, the United States Supreme Court has supported a uniform definition of the term within the Tax Code. *Germantown Trust Co. v. Commissioner of*

7

**C.  Honest and Reasonable Attempt to Satisfy Tax Law**

We next turn our attention to the application of the *Beard* test to the present case.  The parties agree that three of the four prongs are met: (1) the document contains sufficient data to calculate tax liability; (2) the document purports to be a return; and (3) the Debtor executed the return under penalty of perjury.  The parties disagree as to whether the Debtor's 1040 Forms constitute honest and reasonable attempts to satisfy the requirements of the tax law.

The United States argues that the filing of a 1040 Form after the Internal Revenue Service has assessed the tax *per se* cannot constitute an honest and reasonable attempt to satisfy the requirements of the tax law.  If such a *per se* rule applies, summary judgment in its favor is proper.  If not, we must decide whether the Debtor made an honest and reasonable attempt to satisfy the tax laws.

**D.  Appellate Court Determinations of What Constitutes a Return in the Bankruptcy Context**

Three Courts of Appeals have addressed the issue of what constitutes a tax return under Section 523 of the Bankruptcy Code.  In *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1035 (6th Cir. 1999), the Sixth Circuit Court of Appeals concluded that a 1040 Form filed after assessment did not qualify as a return under Section 523(a)(1)(B).  The court noted that the Tax Code does not specify when a late tax form no longer qualifies as a return under the tax law.  *Id.* at 1033.  The court also observed that a form filed after the taxpayer failed to respond to a deficiency notice and after the government had assessed the tax liability served no tax purpose.  In that case, this fact alone was sufficient for the government to meet its

*Internal Revenue*, 309 U.S. 304, 308-09 (1940).  We have no reason to believe Congress intended a different meaning for the term in the context of the Bankruptcy Code.

8

burden of establishing that the debtor's action in filing the forms was not an honest and reasonable effort to satisfy the tax law. *Id*. at 1034-35. The court held that if the document served no purpose under the Tax Code, such document could not as a matter of law qualify as an honest and reasonable attempt to satisfy the requirements of the tax law. *Id*. at 1035.

In *United States v. Hatton (In re Hatton)*, 220 F.3d 1057 (9th Cir. 2000), the Ninth Circuit Court of Appeals determined that the combination of a substitute for return prepared by the Internal Revenue Service and an installment agreement signed by the taxpayer did not constitute a return under Section 523(a)(1)(B)(i). The court concluded that neither document was signed by the taxpayer under penalty of perjury, thus failing to satisfy that element of the *Beard* test. *Id*. at 1061. The court also concluded that the installment agreement and the substitute return did not qualify as an honest and reasonable attempt to satisfy the requirements of the tax law because the taxpayer never filed a return on his own initiative and never attempted to cure this failure until after the Internal Revenue Service threatened to levy his wages and bank account and seize his personal property. *Id*. The *Hatton* case is factually distinguishable from the Debtor's case because here, among other things, the Debtor did file a signed tax return.

In *Moroney v. United States (In re Moroney)*, 353 F.3d 902, 907 (4th Cir. 2003), the Fourth Circuit Court of Appeals determined that a taxpayer's 1040 Forms filed at least four years after originally due and more than two years after the Internal Revenue Service had prepared substitutes for returns did not qualify as returns for purposes of Section 523(a)(1)(B)(i) because they did not represent honest and reasonable attempts to comply with the tax laws. The court expressly rejected a *per se* rule that a post-assessment filing can never qualify as a return for purposes of

9

Section 523(a)(1)(B)(i).[6]  Instead, the court relied on the facts and circumstances of the case to reach its conclusion.

Two Bankruptcy Appellate Panels have also addressed the issue before us.  In *Savage v. Internal Revenue Service (In re Savage)*, 218 B.R. 126 (B.A.P. 10th Cir. 1998), the Tenth Circuit Bankruptcy Appellate Panel concluded that 1040 Forms filed after the Internal Revenue Service had prepared substitutes for returns qualified as returns for purposes of Section 523(a)(1)(B)(i) of the Bankruptcy Code.  The court reached its conclusion without consideration of the *Beard* test, noting that while the *Beard* definition "appears to have application to the interpretation of 'return' in § 523(a)(1)(B)," the Internal Revenue Service had failed to raise the argument at trial. *Id*. at 132-33.

In *United States v. Nunez (In re Nunez)*, 232 B.R. 778 (B.A.P. 9th Cir. 1999), the Ninth Circuit Bankruptcy Appellate Panel affirmed the bankruptcy court's conclusion that 1040 Forms filed nine years late and after assessment by the Internal Revenue Service were returns under Section 523(a)(1)(B)(i).  The court determined that prior assessment is not an absolute bar to a later-filed document qualifying as a return.  In applying the *Beard* test, the court noted that the good faith element only requires that the document appear on its face to be an honest and genuine endeavor to satisfy the tax law.  The intent at the time of the filing is the only relevant inquiry. Any other considerations address a fraud analysis under Section 523(a)(1)(C) of the Bankruptcy Code.

The appellate courts which have addressed the issue agree that the *Beard* test controls.  However, they disagree as to the meaning of the honest and reasonable

---

[6]In rejecting the government's request for a *per se* rule, the Court stated, "This simply goes too far."  *Id*.

prong. A deeper look into the origin of the *Beard* test is necessary to shed light on what constitutes an honest and reasonable attempt to satisfy the tax laws.

### E.    Origin of *Beard* Test

In order to determine what is meant by an honest and reasonable attempt to satisfy the tax laws, we look to the origin of the phrase. The Supreme Court first used the terms "honestly" and "reasonably" in the tax context in *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453 (1930). In *Florsheim*, the Supreme Court determined that a form entitled Tentative Return and Estimate of Corporation Income Taxes and Request for Extension of Time for Filing Return ("1031T Form") was not a return for purposes of activating the statute of limitations. For the tax year at issue, Congress did not enact the tax law until nineteen days before corporate tax returns were due. Realizing the difficulty corporations would have in timely completing tax returns, the Commissioner of the Internal Revenue Service created the 1031T Form which required an oath of the corporate president or treasurer, a statement that one-fourth of the estimated amount of taxes due accompanied the form, and a request for an extension of time to file the return with a reason for the extension request. The form was designed to enable corporations to avoid penalties and interest for failure to timely file returns. The taxpayers in question timely filed the 1031T Forms and later filed full returns on the prescribed forms. Thereafter the Internal Revenue Service assessed additional taxes. The assessments were timely if the statute of limitations began to run upon the filing of the full returns but were tardy if the statute of limitations began upon the filing of the 1031T Forms. In addressing whether or not the 1031T Forms were returns for statute of limitations purposes, the Court stated that the "word 'return' is not a technical word of art." 280 U.S. at 462. The Court noted that the filing of an incomplete or defective return is sufficient to start the running of the limitations period because "the defective or incomplete return purports to be a specific statement of the items of income, deductions, and credits in compliance with [the applicable tax code section]. And, to have that effect, it must

11

honestly and reasonably be intended as such." *Id*. The 1031T Form did not contain a statement of income, deductions, and credits and therefore did not qualify as a return for limitations purposes.

The Supreme Court used the phrase "honest and genuine endeavor to satisfy the law" in the tax context in *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180 (1934). In *Zellerbach*, the Supreme Court was again asked to determine when the statue of limitations for deficiency assessments began to run. The corporate taxpayer at issue had filed timely returns under the tax laws applicable at the time. After the returns were filed, Congress enacted a new tax law with a retroactive effect. The Commissioner of the Internal Revenue Service issued Treasury Decisions advising taxpayers who had filed returns under the prior law and who were subject to an additional tax by virtue of the change to file new or supplemental returns. The corporate taxpayer did not file a new or supplemental return. Seven years after the corporate taxpayer had filed the return, the Internal Revenue Service issued notices of deficiency assessments for the tax year in which the tax laws changed. The timeliness of the deficiency assessments turned on whether the return was a return in light of the subsequent change in the law. The Commissioner argued that the return filed by the taxpayer was not the return which was required by the later law. The Court concluded that the new law merely required an amended or supplemental return and that such requirement did not deprive the taxpayer's return of its status as such. The Court noted that "[p]erfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such (*Lucas v. Pilliod Lumber Co.*, 281 U.S. 245, 50 S.Ct. 297, 74 L.Ed. 829, 67 A.L.R. 1350) and evinces an honest and genuine endeavor to satisfy the law." 293 U.S. at 180. The Court added that "[t]his is so though at the time of filing the omissions or inaccuracies are such as to make amendment necessary." *Id*.

The Supreme Court later relied on *Zellerbach* to conclude that fraudulent returns were not nullities despite the fact that they "were not honest." *Badaracco v.*

*Commissioner of Internal Revenue*, 262 U.S. 386, 397 (1984). The fraudulent returns were in fact returns where they "purported to be returns, were sworn to as such, and appeared on their faces to constitute endeavors to satisfy the law." *Id*. The Supreme Court has thus clarified that the phrase "evinces an honest and genuine endeavor to satisfy the law" in *Zellerbach* includes documents which appear on their face to constitute endeavors to satisfy the law, regardless of the taxpayer's intent at the time the document was filed. Subjective intent is therefore not relevant in determining whether a document is an "honest and reasonable attempt to satisfy the law." Instead, objective intent as apparent on the face of the document is sufficient to satisfy this prong of the *Beard* test.

### F.     Test for Honest and Reasonable Prong of *Beard* Test

After considering the foregoing cases, we reject a *per se* rule that a return filed post-assessment cannot be an honest and reasonable attempt to satisfy the tax law and therefore cannot be a return. To the extent *Hindenlang* holds otherwise, we respectfully disagree with the Sixth Circuit Court of Appeals. Instead we agree with the *Moroney, Savage* and *Nunez* courts which looked beyond the fact that the 1040 Forms were filed post-assessment to determine whether the forms represented honest and reasonable attempts to satisfy the tax laws.

This brings us to the next question: What is the test for determining if a document is an honest and reasonable attempt to satisfy the tax laws? The Supreme Court has made it clear this is an objective and not a subjective test. If a subjective test applied, then a fraudulent return could not be a return; yet the Supreme Court has told us otherwise in *Badaracco*. Furthermore, if the taxing authority is required to establish subjective intent under Section 523(a)(1)(B)(i) of the Bankruptcy Code – namely that the debtor did not intend the document to be an honest and genuine attempt to satisfy the tax law – how is this different than establishing that the debtor made a fraudulent return or wilfully attempted in any manner to evade or defeat such

13

tax under Section 523(a)(1)(C)?[7] We thus must look at the documents – in this case the 1040 Forms – and determine if they appear on their faces to constitute endeavors to satisfy the law. *Badaracco*, 464 U.S. at 397.

Applying this test to the facts before us, we conclude that the Debtor's 1040 Forms do in fact appear on their faces to be tax returns. In fact, the Internal Revenue Service modified the Debtor's tax liabilities after receipt of the 1040 Forms. The documents thus appeared to the Internal Revenue Service to be honest statements of income, deductions, and credits – all information necessary to calculate the Debtor's tax liabilities. Accordingly, the Debtor did file tax returns for the years in question and, therefore, the taxes are not excepted from discharge pursuant to Section 523(a)(1)(B)(i) of the Bankruptcy Code.

This result is consistent with a plain reading of the statutory language which does not contain any modifiers for the term "return." It is likewise consistent with the Supreme Court's use and interpretation of the phrase "honest" in connection with what constitutes a tax return. Additionally, this result is consistent with the Bankruptcy Code's intent with respect to taxes: taxes should not be discharged unless the taxing authority has had an opportunity to collect them. The time limitations in the Bankruptcy Code relating to taxes are designed to ensure that taxing authorities have the opportunity to collect taxes before any discharge in bankruptcy. As a result,

---

[7]By excluding from discharge both taxes for which no return was filed and taxes for which fraudulent returns were filed, Congress created two separate exceptions. If Congress meant for a subjective test to apply to determine whether a properly filled out tax form is a return, Section 523(a)(1)(B)(i) is unnecessary because Section 523(a)(1)(C) exempts any tax where the taxpayer's motive was other than honest. We select an interpretation which gives meaning to each subsection.

recent taxes are entitled to priority and excepted from discharge.[8]  Furthermore, tardiness in filing a return does not prohibit the discharge of a tax liability unless the late tax return was filed less than two years before the petition date.[9]  Again, this provision allows the taxing authority an opportunity to attempt to collect the taxes before a debtor can discharge the liability.  In the instant case the Internal Revenue Service had an opportunity to collect the Debtor's income tax liabilities for tax years 1992 through 1996.  The Internal Revenue Service assessed the taxes in 1998 and 1999, at least three and a half years before the bankruptcy filing. Additionally, the Debtor filed the returns more than three years before filing bankruptcy.  The Debtor's income tax liabilities for tax years 1992 through 1996 do not fall within the exception to discharge set forth in Section 523(a)(1)(B)(i) of the Bankruptcy Code.

**CONCLUSION**

The 1040 Forms filed by the Debtor after the Internal Revenue Service had assessed the Debtor's tax liabilities qualify as returns pursuant to Section 523(a)(1)(B)(i) of the Bankruptcy Code.  Accordingly we AFFIRM the entry of summary judgment in favor of the Debtor determining that the Debtor's tax liabilities for tax years 1992 through 1996 were discharged.

_____

[8]Taxes for which a return is last due within three years before the bankruptcy petition or which are assessed within 240 days before the petition date are entitled to priority and excepted from discharge.  11 U.S.C. §§ 507(a)(8)(A) and 523(a)(1)(A).

[9]11 U.S.C. § 523(a)(1)(B)(ii).

15